**PARTS INDUSTRIES CORPORATION,**
Appellant,

v.

**A.V.A. SERVICES, INC., Appellee.**

No. 13–99–509–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

March 13, 2003.

John S. Morgan, Snider & Morgan, Beaumont, for Appellant.

Lynn J. Klement, Attorney At Law, Angleton, for Appellee.

Before Chief Justice VALDEZ and Justices CASTILLO and AMIDEI.[1]

## OPINION

Opinion by Justice AMIDEI.

A.V.A. Services, Inc., appellee (AVA) sued GPK Parts Industries, Inc., appellant (GPK) for breach of a commercial real estate lease and to enforce an option to purchase thereunder. GPK appeals from an adverse jury verdict and judgment in the amount of $43,336.19, plus 10% interest

---

**1.** Former Justice Maurice Amidei assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003 (Vernon 1998).

and attorney's fees, alleging nineteen issues for our review. GPK's primary contention is that as a matter of law AVA waived its cause of action for breach of implied warranty of suitability for commercial purposes, and the jury should have awarded it delinquent rent, holdover rent, penalties and late fees which it sought in its counterclaim. We affirm.

## Factual Background

GPK leased a warehouse in Beaumont to AVA. AVA's president, Mr. Dorset and one of its employees, Mr. Light, inspected the premises several times prior to signing the lease on May 31, 1990. During the first inspection, they noticed the roof leaked even though the electricity was off. GPK assured AVA the warehouse was in good condition but there were many latent defects, including massive roof leaks and electrical problems caused by leaking water which could not be discovered until the electricity was turned on. GPK's agent refused to turn on the electricity until the

lease was signed. AVA certified that it inspected the warehouse, accepted it in its "as is condition," as suitable "for the purposes for which same are leased."[2] In order to accommodate AVA, GPK made numerous modifications and repairs for which it was not responsible under the lease.

The lease provided that GPK shall keep the roof in good repair,[3] and in the event GPK breached any obligation under the lease AVA would have, in addition to any other remedies provided by law, statute or ordinance,[4] the cumulative right to (1) either terminate the lease, or (2) make the necessary repairs (to be reimbursed by GPK)[5]. The use of any one right or remedy by either party shall not preclude or waive its right to use any or all other remedies.[6] The lease obligated AVA to pay $4,000.00 monthly rental payments from December 1, 1990, to June 30, 1992 and $5,500.00 per month for the last twenty-four months of the lease or until June 30, 1994, plus late charges and penalties in

---

**2.** Paragraph 8 of the lease provides as follows: "CONDITION OF PREMISES. Tenant has examined and accepts the leased premises in its present as is condition as suitable for the purposes for which the same are leased, and does hereby accept the leased premises regardless of reasonable deterioration between the date of this lease and the date Tenant begins occupying the leased premises unless Landlord and Tenant agree to repairs or refurbishment as noted in Special Provisions."

**3.** Paragraph 9 of the lease provides in pertinent part: "MAINTENANCE AND REPAIRS. Landlord shall keep ... the roof of the leased premises in good repair ..."

**4.** Paragraph 29 of the lease provides: "RIGHTS AND REMEDIES CUMULATIVE. The rights and remedies by this lease agreement are cumulative and the use of any one right or remedy by either party shall not preclude or waive its right to use any or all other remedies. Said rights and remedies are given in addition to any other rights the parties may

have by law, statute, ordinance, or otherwise."

**5.** Paragraph 23 of the lease in pertinent part provides: DEFAULT BY LANDLORD. In the event of breach by Landlord of any covenant, warranty, term or obligation of this lease, then Landlord's failure to cure same within 10 days after written notice thereof by Tenant shall be considered a default and shall entitle Tenant either to terminate this lease or cure the default and make the necessary repairs and any expense incurred by Tenant shall be reimbursed by the Landlord after reasonable notice of the repairs and expenses incurred.

**6.** Paragraph 29 of the lease provides: "RIGHTS AND REMEDIES CUMULATIVE. The rights and remedies by this lease agreement are cumulative and the use of any one right or remedy by either party shall not preclude or waive its right to use any or all other remedies. Said rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance, or otherwise."

the event of late payments as therein provided. In the event of "holding over" the lease would become a tenancy from month to month and the lease rental obligation of AVA would increase to $6,000.00 per month. Although the 48–½ month lease term began on June 15, 1990, rent payments were abated for five months by GPK. Complaints [7] of a leaky roof were made to the real estate agent [8] and although some repairs were made or attempted by a company hired by the agent and some repairs were made by AVA, AVA claimed the repairs were not successful and that it could not afford to make all the necessary roof repairs or vacate the warehouse and leave $40,000.00 it invested in the lease. Also, AVA claimed its intent was to purchase the warehouse property under the option provided in the lease, and therefore did not wish to terminate the lease. GPK, through its agent, the real estate agent, undertook to make roof repairs pursuant to the lease, even if inadequate. AVA chose to not make the necessary roof repairs because of financial limitations, its desire to protect its option to purchase rights and to reserve its right to reimbursement (or a new roof upon purchase of the property). When he received repair requests, Mr. Carey had Perkins Roofing Company repair the roof. AVA never complained about the roof repairs by Perkins. AVA solicited a bid from Perkins to replace the roof after AVA became a holdover tenant. The roof did not require replacement until November 1993. The real estate agent informed AVA it could replace the roof. AVA did not replace the roof or request that it be replaced until it attempted to exercise the option to purchase. When GPK became aware of AVA's complaints about the roof, GPK lowered the option purchase price to accommodate the replacement of the roof. On June 10, 1994, AVA exercised its option to purchase the warehouse for $325,000.00, expressly subject to financing. The original purchase price of $400,000.00 was lowered by $75,000.00, the amount of the estimated roof replacement. AVA did not close the option purchase during the time provided because it did not obtain the required financing. AVA refused to pay rent as a holdover tenant, and GPK filed eviction proceedings on April 11, 1995. The amount of back rent and penalties totaled $451,000.00, and the amount of attorney's fees sought by GPK was $15,000.00. A lis pendens notice filed by AVA on September 11, 1995 allegedly prevented GPK from selling the warehouse for over three years. AVA alleged the leaky roof caused damage to its products stored in the warehouse, its vending machines and equipment, and its trucks due to rusty water from the roof dripping on the trucks. AVA presented GPK with a demand for damages caused by the leaking roof.

**Jury Findings**

The answer to jury question number one finds that GPK failed to comply with the lease, but despite the accompanying instruction and definition as to implied warranty of suitability the jury did not find nor was it required to find the non compliance was a breach of the express obligation to repair the roof or a breach of implied warranty of suitability.

In answer to jury question number two the jury found that GPK's failure to com-

---

7. AVA complained of the roof leaks and demanded that GPK comply with its lease obligation to repair the roof in at least 37 letters over a two year period.

8. AVA was instructed by GPK to make its complaints to GPK's real estate agent rather that to GPK.

ply with the lease was not excused. This question was accompanied by instructions that GPK is excused by AVA's previous failure to comply with a material obligation of the same agreement or if compliance is waived by AVA. Waiver was defined as an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

The jury found in answer to jury question number three that AVA failed to comply with the lease, and in answer to question number four that AVA's failure to comply was excused. Question number four was accompanied by the instruction that failure to comply by AVA is excused by GPK's previous failure to comply with a material obligation of the same agreement, if so found, or by GPK's breach of its implied warranty of suitability for commercial purposes, if so found.

Jury question number five inquired as to AVA's damages, and the jury found AVA was damaged $10,000.00 due to water damaged inventory or product, $12,500.00 costs to repair damaged equipment, $10,000.00 costs to repair damaged vehicles, and nothing for increased operational expense due to personnel turnover.

The jury denied GPK any recovery for rentals by not answering jury question number six.

Jury questions seven, eight, nine and ten inquiring as to the parties' conduct and obligations concerning the option to purchase agreement were answered in favor of GPK.

The jury found in question number 11 that the lis pendens notice filed by AVA should be removed.

Answers to jury questions 12 and 13 found the amount of reasonable attorney's fees for AVA and GPK respectively in the amount of $20,000.00 for the trial, $4,500.00 for an appeal to the court of appeals, $1,000.00 in the event of an application for writ of error to the Supreme Court of Texas, and $3,000.00 if application for writ of error is granted by the Supreme Court of Texas. The trial court's judgment awards AVA the amounts of attorney's fees as found by the jury in jury question number 12 and properly corrected the wording from "writ of error" to "petition for review"to acknowledge the change of wording in the 1997 amendments to the Texas Rules of Appellate Procedure [9].

### Standard of Review

When reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *Southwestern Bell Mobile Sys. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998)(per curiam); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690(Tex.1989). If there is no evidence to support the finding, we must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* Only if the contrary proposition is established conclusively by the evidence, will the issue be sustained. *Perry Homes v. Alwattari*, 33 S.W.3d 376, 383 (Tex.App.-Fort Worth 2000, pet. denied). A "no evidence" point will be sustained if there is no more than a scintilla of evidence to support the finding. *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588(Tex.1999). If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61,

9. Tex.R.App. P. 53.

63 (Tex.1983). In conducting a factual sufficiency review, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding, and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

■■■■ When the interpretation of a contract is in issue, the trial court must first determine whether the provisions in question are ambiguous. *Lopez v. Munoz, Hockema & Reed,* 22 S.W.3d 857, 861 (Tex. 2000). The question of whether a contract is ambiguous is a question of law for the trial court's determination. *Id.* A contract is ambiguous if it is reasonably susceptible to more than one meaning. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Neither of the parties argue that the terms of the lease are ambiguous; they simply disagree over its construction and interpretation. A disagreement over the meaning of a contract provision does not render the provision ambiguous. *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.,* 3 S.W.3d 112, 120–21 (Tex.App.-Corpus Christi 1999, pet. denied). When the parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent by examining and considering the entire writing in an effort to give effect to the parties' intentions as expressed in the contract. *Coker,* 650 S.W.2d at 393. The intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written. *Pegasus Energy,* 3 S.W.3d at 121. Legal conclusions of the trial court are always reviewable and the appellate court is not obliged to give any particular deference to those conclusions. *Id.* The appellate court reviews questions of law de novo. *Id.*

■■■■ The implied warranty of suitability by the landlord in a commercial lease that the premises are suitable for their intended commercial purpose means that at the inception of the lease there are no latent defects in the facilities that are vital to the use of the premises for their intended commercial purposes and these essential facilities will remain in suitable condition. *Davidow v. Inwood North Prof. Group–Phase I,* 747 S.W.2d 373, 377 (Tex. 1988). The breach of such warranty is usually a fact question to be determined from the particular circumstance of each case. *Id.* Among the factors to be considered when determining whether there has been a breach of warranty is whether the tenant waived the defects. *Id.*

### Issues Presented

GPK's issues one, two, three, six, and eight are stated as follows:

1. The trial court erred in submitting Question No. 1 to the jury, because the construction and application of an unambiguous commercial lease is a question of law for the court.

2. The trial court erred in submitting Question No.1 to the jury, because Appellee waived its cause of action for Appellant's breach of warranty of suitability.

3. The trial court erred in rendering judgment in favor of Appellee for Appellant's breach of a warranty of suitability, because Appellee waived its recovery of any damages for Appellant's breach of a warranty, or alternatively, Appellee's claim for damages is legally barred.

6. The trial court erred in submitting Question No. 2 to the jury, because Appellee waived its claim for appellant's breach of a warranty of suitability.

8. The trial court erred in submitting jury Question No. 2 (inquiring whether

Appellant's breach of warranty was excused), because the interpretation and application of an unambiguous lease is a question of law for the court.

▮▮▮▮ GPK correctly states that the lease was admitted into evidence, and neither party claimed it was ambiguous, but does not explain or develop an argument to show how jury questions numbers one and two as submitted constituted an improper construction of the lease by the trial court. Question number one although broad only inquires as to whether GPK complied with the lease as a matter of fact. Question number two doesn't inquire whether GPK's breach of warranty was excused as claimed by GPK, but only inquires whether any lack of compliance of the lease was excused. Jury questions numbers one and two do not interpret or construe the meaning of the lease. GPK waived any complaint by failing to object to the submission of the question on the grounds it improperly construed and applied an unambiguous commercial lease which was properly a question of law for the court. Tex.R.App. P. 33.1; Tex.R. Civ. P. 274. If such an objection had been made by GPK, the trial court would not have erred by overruling same. The jury's answers to questions numbers one and two in favor of AVA could have been, but were not necessarily based on the definition of "Implied Warranty of suitability for commercial purpose" included in the charge. It could have been based on the jury's belief that GPK failed to comply with the express obligation to repair the roof as it does not limit the inquiry to only whether there was a breach of warranty of suitability. GPK cites no authority to support its claim the trial court erred in submitting jury questions numbers one and two because of an improper interpretation of the lease as claimed in its issues numbers one and eight.

GPK's issues two, three, six and eight argue that because as a matter of law AVA waived its breach of warranty of suitability cause of action the trial court erred in submitting jury questions numbers one and two and rendering judgment for AVA.

▮▮▮▮ Waiver is normally a fact question. *Caldwell v. Callender Lake Prop. Owners Imp. Asso.*, 888 S.W.2d 903, 910 (Tex.App.-Texarkana 1994, writ denied). The case cited by GPK, *Alford Meroney & Co. v. Rowe*, 619 S.W.2d 210 (Tex.Civ.App.-Amarillo 1981, writ ref'd n.r.e.), involved the submission of waiver as a fact issue, not a matter of law finding by the court. GPK argues that Texas courts have held the waiver doctrine is applicable in the commercial lease setting, and cites three cases which involve contract non waiver provisions, however, these cases do not support waiver as a matter of law in the commercial lease setting and are not in point factually.[10] The case cited by GPK which held waiver as a matter of law involved an interest in a natural gas fractionation plant and the alleged violation of an operating agreement, not a commercial lease or an implied warranty of suitability with lease provisions as in this case. *Tenneco, Inc. v. Enter. Prod. Co*, 925 S.W.2d 640, 643 (Tex.1996). Even if a party's silence or inaction for a period of three years without attempting to enforce its rights was held to be a waiver as a matter of law in a case involving a commercial lease, there is evidence in this case indicating AVA did not intend to waive any remedy. AVA immediately complained upon

---

**10.** *Winslow v. Dillard Dep't Stores, Inc.*, 849 S.W.2d 862 (Tex.App.-Texarkana 1993, writ denied); *Zwick v. Lodewijk Corp.*, 847 S.W.2d 316 (Tex.App.-Texarkana 1993, writ denied);

*Regent Intern. Hotels v. Las Colinas Hotels*, 704 S.W.2d 101 (Tex.App.-Dallas 1985, no writ).

moving into the warehouse. There were at least 37 letters complaining of the roof leaks and demanding GPK comply with its lease obligation to repair the roof. The letters cover a two year period. Despite assurances that the warehouse was in good condition, there were many latent defects, including massive roof leaks and electrical problems caused by leaking water. The defects could not be discovered before the lease was signed because there was no electricity, and GPK's agent, American Real Estate, refused to turn on the power until the lease was signed. AVA presented GPK with a demand for damages caused by the leaking roof. AVA attempted to offset repair costs it incurred because of the defects and leaking roof. One time AVA refused to pay rent as an offset, but was threatened with eviction. Once GPK beached the lease when AVA attempted to be reimbursed for roof repairs, AVA was not obligated to terminate the lease. GPK could not gain termination of the lease by simply denying AVA's right to have roof repair expenses reimbursed by GPK. The lease provided AVA the remedy to terminate the lease if GPK failed to repair the roof but did not require AVA to terminate the lease to recover the roof repair expense from GPK. AVA was not financially able to terminate the lease and lose its $40,000.00 investment in the lease to make it suitable, and desired to purchase the property under the option to purchase. AVA had good faith reasons to not terminate the lease. GPK cites no authority or lease provisions which support its argument that termination was AVA's exclusive remedy, or that AVA's claim for damages is somehow barred.

■■■■ By contending its waiver defense was proved as a matter of law, GPK attacks the legal sufficiency of the evidence supporting the jury findings of no waiver and must show on appeal the evidence conclusively established all vital facts in support of waiver. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex.1991); *Pacific Employers Ins. Co. v. Dayton*, 958 S.W.2d 452, 455 (Tex.App.-Fort Worth 1997, pet. denied). In reviewing a "matter of law" challenge, this Court must employ a two prong test. *Dayton*, 958 S.W.2d at 455 (citing *Brady*, 811 S.W.2d at 940). First we must examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the finding, we must then examine the entire record to determine if the contrary proposition is established conclusively by the evidence. *Perry Homes v. Alwattari*, 33 S.W.3d 376, 383 (Tex.App.-Fort Worth 2000, pet. denied).

The lease clearly provides that GPK is responsible for roof repairs. Grant Dorsett, president of AVA Services, Inc., testified that AVA made numerous demands for repairs to the roof and also made some repairs related to the leaky roof. In accordance with the lease, AVA requested reimbursement from GPK for the repairs and damages; however, GPK did not tender any reimbursement. This constitutes more than a scintilla of evidence to support the jury's finding that GPK failed to comply with the lease. Accordingly, we find that GPK failed to meet the first prong of its "matter of law" challenge. *Sterner*, 767 S.W.2d at 690.

■■■■ As a matter of law, the landlord's implied warranty of suitability for commercial purposes is limited only by those specific terms in a commercial lease whereby a tenant expressly agrees to repair certain defects. *Gober v. Wright*, 838 S.W.2d 794, 798(Tex.App.-Houston [1st Dist.] 1992, writ denied). Under paragraph number 23 of the lease in this case AVA did not in specific terms expressly

agree to repair defects in the roof. *Id.* The provision affords AVA with the optional remedy of termination or to make repairs GPK was obligated to make, but AVA was not required to take either option to preserve any rights under the lease. We hold as a matter of law GPK's implied warranty of suitability for commercial purposes was not limited by paragraph 23, and AVA was entitled to recover on a breach of GPK's implied warranty of suitability for commercial purposes.

■ In any event, AVA could not waive its remedy of breach of implied warranty by using its remedy of an action based on breach of the express lease provision to repair the roof because the non waiver of remedies provision in paragraph 29 of the lease prohibits same. The jury's answer to jury question number two in effect found that AVA did not waive any right or remedy. AVA's conduct did not constitute waiver as a matter of law.

AVA accepted the warehouse in its as is condition [11] and required no repairs or refurbishment prior to moving in except as noted in the Special Provisions paragraph of the lease. However, GPK cites no authority to support its argument that such acceptance by AVA relieved GPK of its obligation to repair the roof as expressed in the lease, or otherwise.

GPK's issues numbers one, two, three, six, and eight are overruled.

GPK's issue number four states as follows:

4. The jury finding that Appellant breached a warranty of suitability is against the great weight and preponder-ance of the evidence; or alternatively is not supported by sufficient evidence.

■ GPK's issue number four assumes jury question number one found GPK breached a warranty of suitability. As discussed above, jury question number one did not require the jury to find for AVA on a theory of breach of implied warranty of suitability, but it asks if GPK failed to comply with the lease. GPK had a duty to repair the roof. We will review the evidence to determine whether it supports either a finding of breach of warranty of suitability or a finding of breach of express provisions of the lease. GPK argues that the evidence shows it did not breach a warranty because, (1) AVA complained of roof leaks to the real estate agent, and never complained that the company hired to fix the roof did a poor job; and (2) that AVA chose not to repair or replace the roof on its own even though it had the right to do so under paragraph 23 of the lease. GPK admits it required AVA to notify the real estate agent in the event of roof leaks, and then complains that it had no notice of AVA's complaints of roof leaks which were directed to the agent.

GPK did not deny the real estate agent was its agent for accepting AVA's complaints of roof leaks. AVA continued to complain of the leaky roof after the repair work performed by the company hired by the real estate agent. It was undisputed the roof was never adequately repaired. There were at least 37 letters complaining of the roof leaks and demanding that GPK comply with its obligation to repair the roof. One time, when AVA attempted to offset roof repair costs it incurred, it was threatened with eviction. AVA was finan-

---

11. Paragraph 8 of the lease provides as follows: "CONDITION OF PREMISES. Tenant has examined and accepts the leased premises in its present as is condition as suitable for the purposes for which the same are leased, and does hereby accept the leased premises regardless of reasonable deterioration between the date of this lease and the date Tenant begins occupying the leased premises unless Landlord and Tenant agree to repairs or refurbishment as noted in Special Provisions."

cially unable to make all of the necessary roof repairs. There was no evidence that AVA excused GPK's obligation to repair the roof or otherwise maintain the warehouse. GPK attempted to prove AVA waived GPK's obligations by arguing the fact AVA failed to repair the roof or terminate the lease under paragraph 23 of the lease, but did not allege or prove AVA waived the non waiver provision in paragraph 29 of the lease.

Because GPK does not otherwise specify the evidence it considers to be no more than a mere scintilla or cite any rule of law barring the court from giving weight to any of the evidence there is a complete absence of evidence of GPK's alleged defense. *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 666, n.9 (Tex.1990). The evidence GPK complains of is not clearly wrong and unjust, insufficient or contrary to the overwhelming weight of the evidence or insufficient. *Cain*, 709 S.W.2d at 176.

GPK's issue number four is overruled.

GPK's issue number five states as follows:

5. The trial court erred by providing a definition of "implied warranty of suitability for commercial purposes" in the jury charge that was erroneous. This erroneous definition led to an improper verdict in this case.

The definition used in the charge to the jury was as follows:

'Implied Warranty of suitability for commercial purpose' means that when the lease was entered into there were no latent defects in the facilities that were vital to the use of the premises for their intended commercial purposes and that those essential facilities will remain in a suitable condition. There is an implied warranty of suitability for commercial purpose in every commercial lease.

AVA contends this definition is essentially the same as the one upheld by the Texas Supreme Court in *Davidow v. Inwood North Pro. Group–Phase I*, 747 S.W.2d 373, 377(Tex.1988). We agree. GPK cites *Gober v. Wright*, 838 S.W.2d 794 (Tex.App.-Houston [1st Dist.] 1992, writ den.), to support this issue, and argues an instruction as to correlative duties under the lease should have been given to the jury; however, *Gober* cites and follows *Davidow* and holds that the tenant's obligation to pay rent and the landlord's implied warranty of suitability are mutually dependent; and the existence of a breach of the implied warranty of suitability in commercial leases is usually a fact question to be determined from the particular circumstances. *Davidow*, 747 S.W.2d at 377. The trial court's definition of implied warranty of suitability was not error, and the jury was entitled to hold GPK's failure to comply with the lease was a breach of its implied warranty of suitability of a commercial lease, or that it was a breach of express provisions of the lease.

GPK's issue number five is overruled.

GPK's issues numbers seven, nine, ten, eleven and fifteen state as follows:

7. The jury's finding in response to Question No. 2 (inquiring whether Appellant's breach of warranty was excused) is against the great weight and preponderance of the evidence, or alternatively is supported by insufficient evidence.

9. The trial court erred in entering final judgment nunc pro tunc on Jury Question No. 4, because Appellee's failure to pay rent is not excused as a matter of law.

10. The jury's finding in response to Question No. 4 (finding that Appellee's breach of the lease was excused) is against the great weight and preponder-

ance of the evidence, or alternatively is supported by insufficient evidence.

11. The trial court erred in submitting Question No. 4 (finding that Appellee's breach of the lease was excused), because the interpretation of an unambiguous lease is a question of law for the court.

15. The trial court erred in not awarding Appellant the past due rent owed by Appellee, because Appellee owed this delinquent rent as a matter of law; alternatively, the jury should have awarded this delinquent rent to Appellant.

■ GPK claims there was insufficient evidence to support jury question number two because AVA's failure to pay rent excused GPK of its duties as a matter of law and cites the *Gober v. Wright* case to support its argument. *Gober* does not support GPK's argument, and as we have already held, the tenant's obligation to pay rent and the landlord's implied warranty of suitability are mutually dependent. *Davidow*, 747 S.W.2d at 377. The old law which held such covenants to be independent thereby requiring a tenant to pay rent even though his landlord has breached his covenant to repair was changed in *Kamarath v. Bennett*, 568 S.W.2d 658, 660–61 (Tex.1978) for residential leases, and in *Davidow* for commercial leases, to be mutually dependent covenants. Issue fifteen states the issue of the duty to pay rent in different words than the previous issues but is essentially the same issue.

As to its issue that jury question number four was supported by insufficient evidence GPK again urges that AVA waived its remedies as a matter of law. We have already held there was no such waiver.

GPK's issues numbers seven, nine, ten, eleven and fifteen are overruled.

GPK's issue number twelve states as follows:

12. The trial court erred in its instruction submitted to the jury in Jury Question No. 4, because this instruction did not properly inform the jury of the legal definition of "excuse." The trial court's error led to an improper verdict in this case.

■ GPK claims the trial court's definition of "excuse" which it submitted to the jury in jury question number four led to an improper verdict because it permitted the jury to impermissibly find that AVA was permitted to not pay rent in 1995, due to its complaints of roof leaks from 1990 through 1992. GPK cites no authority to support this issue, and makes the same argument that AVA was required to abandon the premises in order to be excused from paying rent. We disagree. The instruction properly stated that AVA's breach is excused by GPK's failure to comply with a material obligation of the lease, or by GPK's breach of its implied warranty of suitability for commercial purposes. Considering the pleadings, the evidence admitted at trial and the entire charge, the charge fairly submitted the disputed issues in this case to the jury. *Neuro–Developmental Assocs. of Houston v. Corporate Pines Realty Corp.*, 908 S.W.2d 26, 28 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

GPK's issue number twelve is overruled.

GPK's issues numbers thirteen and fourteen state as follows:

13. The jury's response to Question No. 5 (awarding damages to Appellee for Appellant's breach of a warranty of suitability) is against the great weight and preponderance of the evidence, or alternatively is supported by insufficient evidence.

14. The trial court erred in admitting evidence (over objection of Appellant) that attempted to demonstrate that Ap-

pellee could receive damages on behalf of A.V.A. Vending, and the trial court also erred in admitting invoices of alleged damages prepared two days prior to trial. These erroneous evidentiary rulings led to an improper verdict.

■ GPK claims Plaintiff's Exhibit No. 92 (PX # 92) was improperly admitted over its objection that it was created on November 30, 1998, two days prior to trial, and not more than thirty days prior to trial, and rule 215.5 of the Texas Rules of Civil Procedure requires its exclusion. PX # 92 showed that AVA Services was responsible for the assets owned by AVA Vending, Inc. GPK erroneously believed the November 30, 1998 date was the date the exhibit was created, when actually it was created in 1987. The November 30, 1998 date was a facsimile machine date on the transmission of same that day in response to a pre-trial hearing. GPK failed to make an objection in the trial court as to the alleged date defect and discovery rule violation and waived error, if any. Tex.R.App. P. 33.1(a); Tex.R. Evid. 103(a)(1). There was no error of the trial court by admitting PX # 92.

If GPK had made the proper objection, the trial court could have properly overruled it, because no discovery request was made for PX # 92. GPK first raised PX # 92 as an issue in the pre-trial hearing over whether AVA had the right to bring the suit, which was overruled by the trial court because GPK failed to affirmatively make such a plea pursuant to rule 93 of the Texas Rules of Civil Procedure.

■ GPK's complaint regarding the admission of invoices was not preserved by a proper objection and is waived. Tex. R.App. P. 33.1(a); Tex.R. Evid. 103(a)(1).

■ No further argument or authorities are urged by GPK to support its issues numbers thirteen and fourteen except

an argument that AVA has no standing and such lack of standing somehow translates to insufficient evidence, but no objection in such terms was made by GPK in the trial court and any error as to lack of standing was waived. Tex.R.App. P. 33.1(a); Tex.R. Evid. 103(a)(1).

■ There was sufficient evidence to support the jury's award of damages to AVA. No invoices or documents were used to prove AVA's damaged equipment and vehicles. Mr. Stoutmeister testified that AVA sustained damage to 18–20 machines per month during over four years, whereas, the normal number was two per month, and testified to the repair costs in an amount more than needed to support the jury award of $12,500.00. Mr. Pourcio testified fifteen of AVA's trucks had to be repainted at a cost of $1,500.00 per truck which is more than needed to support the jury award for such damages. Product and inventory loss in the amount of $28,799.88 was proven by Plaintiff's Exhibit No. 99 (PX # 99), and by the testimony of Mr. Bailey and Mr. Dorset substantiating $10,000.00 in damages to lost product independent of PX # 99.

GPK's issues numbers thirteen and fourteen are overruled.

GPK's issue number sixteen states as follows:

16. The trial court erred in failing to instruct the jury that Appellee was a "holdover tenant" under the lease. This error led to an improper verdict.

GPK does not cite any authority or make an argument that the proposed instruction as to "holdover tenant" would have aided the jury, and its absence probably caused the rendition of an improper verdict as required by *Hill v. Winn Dixie Texas, Inc.*, 849 S.W.2d 802, 803–04 (Tex. 1992).

GPK's issue number sixteen is overruled.

GPK's issue number seventeen states as follows:

17. The trial court erred in rendering Final Judgment Nunc Pro Tunc, because the trial court lacked jurisdiction to render this Final Judgment Nunc Pro Tunc, and because this Final Judgment Nunc Pro Tunc constituted an impermissible readjudication of the parties' substantive rights.

■■■■ GPK complains that the trial court lacked jurisdiction to render the final judgment as a "nunc pro tunc judgment" because the change or correction was judicial error, not clerical error. However, the trial court made findings of fact and conclusions of law explaining that he was changing the judgment to be the judgment he rendered for AVA because he had signed the wrong judgment and he was correcting it. In making such findings the court can consider his own recollection of what occurred. *Pruet v. Coastal States Trading, Inc.*, 715 S.W.2d 702, 705 (Tex. App.-Houston [1st Dist.] 1986, no writ). An incorrect judgment signed mistakenly is a clerical error and can be corrected at any time. *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex.1986).

We hold that the error was clerical and the nunc pro tunc judgment properly corrected the judgment.

GPK's issue number seventeen is overruled.

GPK's issues eighteen and nineteen state as follows:

18. The trial court erred in failing to award Appellant attorneys' fees based on Appellant's successful prosecution of its declaratory judgment action and its breach of contract (breach of lease) cause of action.

19. The trial court erred in awarding attorneys' fee to Appellee, because there was no predicate breach of contract finding to support an award of attorneys' fees to Appellee.

■■■■ GPK contends that it should have been awarded attorney's fees because the jury findings that AVA failed to comply with the lease, and that the lis pendens notice should be removed indicated it prevailed in the prosecution of its suit; and that the court erred in awarding AVA attorney's fees and failing to award GPK attorney's fees. The jury found AVA failed to comply with the lease, but found its non-compliance was excused. GPK did not prevail on its contract claim and is not entitled to attorney's fees under section 38.001, *et seq.*, of the Texas Civil Practices and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001— § 38.006 (Vernon 1997).

■■■■ Further, GPK claims the trial court erred in failing to award it attorney's fees under section 37.009 of the Texas Civil Practices and Remedies Code because it prevailed in prosecuting its declaratory judgment action. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997). However, it is the court's discretion whether to award attorney's fees in declaratory judgment actions and GPK has not shown the trial court abused its discretion by denying it attorney's fees. *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). We hold the trial court did not abuse its discretion.

GPK's issues numbers eighteen and nineteen are overruled.

The judgment of the trial court is affirmed.