TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00694-CV





Gym-N-I Playgrounds, Inc., Appellant



v.



Ron Snider, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT

NO. C2002-332B, HONORABLE GARY L. STEEL, JUDGE PRESIDING






O P I N I O N



 This case centers on the applicability and effect of an "as is" clause in a commercial
lease. Gym-N-I Playgrounds, Inc., leased a building from Ron Snider. Under the terms of the lease,
Gym-N-I agreed to accept the building "as is" and disclaimed reliance on warranties and
representations. After the building was destroyed by fire, Gym-N-I sued Snider, asserting various
claims relating to the condition of the building. Relying in part on the "as is" clause, Snider moved
for summary judgment, which the district court granted. On appeal, Gym-N-I argues that summary
judgment was improper because the lease containing the "as is" provision had expired and that the
provision was otherwise unenforceable. For the reasons stated below, we affirm the district court's
grant of summary judgment. 


BACKGROUND

 The following facts are not in dispute. Snider originally owned both Gym-N-I, a
playground equipment manufacturing company, and the building in which Gym-N-I was located. 
Patrick Finn and Bonnie Caddell had both worked in the building for several years as Gym-N-I
employees. Starting in 1987, Finn performed numerous tasks for Gym-N-I, including installing
playground equipment, purchasing materials, maintaining mechanical equipment, looking after
human resources concerns, and performing other odd jobs. Caddell performed bookkeeping services
for the company, first as an independent contractor from 1984 to 1987, then continuing as a Gym-N-I
employee for another six years. 

 Snider's approximately 20,075-square-foot building was slightly over the threshold
triggering the fire sprinkler requirement under the City of New Braunfels Code of Ordinances. (1) The
New Braunfels fire marshal, Elroy Friesenhahn, communicated this fact to Snider. Although
Friesenhahn recommended that Snider install a fire sprinkler system, he did not require it because
the building was only 75 square feet over the square-footage threshold and because he was uncertain
whether hazardous materials were stored in the building. (2) Snider considered installing a sprinkler
system but ultimately chose not to do so. 

 Finn and Caddell bought the Gym-N-I business from Snider on September 30, 1993,
and entered into a commercial lease of the building with Snider. The lease contained the following
provision:


Tenant [Gym-N-I] accepts the Premises "as is." Landlord [Snider] has not made and
does not make any representations as to the commercial suitability, physical
condition, layout, footage, expenses, operation or any other matter affecting or
relating to the premises and this agreement, except as herein specifically set forth or
referred to and Tenant hereby expressly acknowledges that no such representations
have been made. Landlord makes no other warranties, express or implied, of
merchantability, marketability, fitness or suitability for a [document not legible]. 
Any implied warranties are expressly disclaimed and excluded. 



 On January 31, 1995, Gym-N-I and Snider executed an amendment to the lease. The
amendment provided that, upon 90-day advance written notice, Gym-N-I would have the option of
renewing the lease for three two-year terms. The amendment further provided that the terms and
conditions of the original lease would apply to the renewal term, except that rent during this period
would be determined by mutual agreement of the parties. 

 The term of the original lease expired on September 30, 1996, without Gym-N-I
having exercised the renewal option. However, for nearly four years thereafter Gym-N-I continued
to pay, and Snider continued to accept, rent each month. Other than the unexercised renewal option,
the sole written instrument in the record contemplating a continuation of the original lease was a
holdover clause.

 On August 10, 2000, a fire completely destroyed the building and its contents. 
Gym-N-I sued Snider, (3) asserting claims of negligence, fraud under the Deceptive Trade Practices Act
("DTPA"), and breach of the implied warranty of suitability. Specifically, Gym-N-I argued that
Snider's failure to install a sprinkler system as required by the City of New Braunfels Code of
Ordinances constituted gross negligence and negligence per se and that leasing the premises in such
a condition violated the DTPA and breached the implied warranty of suitability. Gym-N-I also
argued that Snider negligently failed to inform it of an overloaded electrical system and other wiring
problems in the building.

 Snider filed a traditional motion for summary judgment asserting that all of Gym-N-I's claims were barred by the "as is" clause and by a valid waiver-of-subrogation clause. Snider
further argued that the lease contained other valid waivers of express and implied warranties that
barred certain claims and that Gym-N-I had admitted that no misrepresentations had been made by
Snider. See Tex. R. Civ. P. 166a(c). The district court granted partial summary judgment in favor
of Snider, which was later merged into a final judgment. (4) This appeal followed. 


DISCUSSION

 Gym-N-I brings two issues on appeal. First, it contends that the "as is" clause was
not carried over in the holdover period of the lease. Second, Gym-N-I contends that, on various
other grounds, the "as is" clause is unenforceable against its claims. (5) 


Standard of review

 Because the propriety of a summary judgment is a question of law, we review the
district court's decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). 
Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled
to judgment as a matter of law. Tex. R. Civ. P. 166a(c); American Tobacco Co., Inc. v. Grinnell,
951 S.W.2d 420, 425 (Tex. 1997); Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex.
1996); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). We affirm if summary
judgment is warranted on any ground asserted to the trial court. Tex. R. Civ. P. 166a(c); Cincinnati
Life Ins. Co., 927 S.W.2d at 625. In deciding whether there is a disputed material fact issue, we take
evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any
doubts in the nonmovant's favor. American Tobacco Co., 951 S.W. 2d at 425; Nixon, 690 S.W.2d
at 548-49. 


Whether the "as is" clause remained in effect

 In its first issue, Gym-N-I asserts that the "as is" clause in the original lease did not
survive during the month-to-month tenancy under which it was leasing the property at the time of
the fire. The original lease term ran from September 30, 1993, until midnight on September 29,
1996. (6)

 The fire occurred almost four years later. Gym-N-I concedes that, at the time of the fire, the
holdover provision of the original lease applied. That provision states:



 HOLDING OVER: In the event of holding over by Tenant after expiration or
other termination of this lease . . . . No holding over by Tenant after the
expiration of the term of this Lease shall be construed to extend the term of this
Lease . . . . Any holding over without written consent of Landlord shall
constitute a lease from month-to-month, under the terms and provisions of this
lease to the extent applicable to a tenancy from month-to-month . . . .




Gym-N-I had continued to pay monthly rent to Snider during that time. 

 Gym-N-I asserts that the holdover provision failed to incorporate the "as is" clause
and that only a formal, written, lease extension or renewal could carry that provision beyond the term
of the original lease. We disagree.

 We construe an unambiguous contract as a matter of law, enforce the unambiguous
language as written, and give the terms their plain, ordinary, and generally accepted meaning. Gulf
Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 424 (Tex. 2000); Heritage Res., Inc. v. Nationsbank,
939 S.W.2d 118, 121 (Tex. 1996); Sun Oil Co. v. Madeley, 626 S.W.2d 726, 728 (Tex. 1981). It is
assumed that every clause is intended to have some effect. Heritage Res., 939 S.W.2d at 121; Ogden
v. Dickinson State Bank, 662 S.W.2d 330, 332 (Tex. 1983). 

 The lease's holdover provision states that "[a]ny holding over . . . shall constitute a
lease from month-to-month, under the terms and conditions of this lease to the extent applicable to
a tenancy from month-to-month . . . ." (Emphasis added.) We are bound to give this provision its
plain, ordinary, and generally accepted meaning. See Gulf Ins. Co., 22 S.W.3d at 424; Heritage Res.,
939 S.W.2d at 121; Sun Oil Co., 626 S.W.2d at 728. The parties clearly intended to create a
month-to-month tenancy at the expiration of the lease and to include all terms of the original lease
not directly related to the duration of the original lease. We accordingly hold that the "as is" clause
from the original lease was incorporated into the holdover lease and was applicable at the time of
the fire. To do otherwise would be to give the phrase "under the terms and conditions of this lease"
no meaning or effect. See id. Therefore, the district court appropriately relied on the leases's waiver
terms when it granted summary judgment in favor of Snider. We overrule Gym-N-I's first issue.


Whether the "as is" clause is enforceable

 In its second issue, Gym-N-I argues that the "as is" clause is unenforceable as against
some or all of its claims. Moreover, Gym-N-I contends that summary judgment is insupportable in
this case because the record contains unopposed evidence of negligence, breach of warranty, and
fraud. We disagree. 


 "As is" clauses generally

 By agreeing to purchase commercial property "as is," a buyer agrees to make its own
appraisal of the bargain and accepts the risks of the agreement. Prudential Ins. Co. of Am. v.
Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995). In Prudential, the supreme court
approved the enforcement of "as is" clauses under certain circumstances. As long as the buyer is not
induced by fraud into accepting the "as is" provision, the legal effect of the provision is to negate
the causation element essential to recovery on claims associated with the physical condition of the
property. Prudential, 896 S.W.2d at 161; Lee v. Perez, 120 S.W.3d 463, 467-68 (Tex.
App.--Houston [14th Dist.] 2003, no pet.). As the court explained, contractual disavowal of reliance
upon any representation is an important element of an arm's-length transaction and is binding unless
set aside. Prudential, 896 S.W.2d at 161. Finally, an "as is" agreement negates the causation
element essential to recovery on DTPA theories, fraud (excluding, of course, fraud in the inducement
of the "as is" agreement), negligence, and breach of the duty of good faith and fair dealing. Id.

 When considering the enforceability of an "as is" clause, we consider five factors: 
(1) the sophistication of the parties, (2) the terms of the "as is" agreement, (3) whether the "as is"
agreement was freely negotiated, (4) whether the agreement was an arm's length transaction, and (5)
whether there was a knowing misrepresentation or concealment of a known fact. Procter III v. RMC
Capital Corp., 47 S.W.3d 828, 833 (Tex. App.--Beaumont 2001, no pet.) (distilling Prudential into
five-factor test). Although not an independent factor, whether the buyer was represented by counsel
is also important. (7) See id. at 833-34. Overall, we apply the factors to determine whether the "as is"
clause in this case meets the "letter and spirit" of Prudential and should be held valid. See id. at 833. 


 Applicability of "as is" clause to a lease


 Gym-N-I does not allege that it was fraudulently induced to enter into the lease. In
fact, Finn and Caddell both testified that they were not fraudulently induced. Instead, Gym-N-I first
argues that Prudential applies only to the sale of property, not a lease, and should thus be
distinguished on that basis. However, although most Texas case law concerns "as is" clauses in the
context of commercial property sales, see, e.g., Prudential, 896 S.W.2d at 156, "as is" clauses can
also apply to leases of commercial property. See Lee, 120 S.W.3d at 467-68 (in which court
considered applicability of "as is" provision in context of commercial lease and held that provision
would waive physical defects of property but did not waive deed restriction); see also Hou-Tex, Inc.
v. Landmark Graphics, 26 S.W.3d 103, 110-11 (Tex. App.--Houston [14th Dist.] 2000, no pet.) ("as
is" provisions valid in lease of computer software). We see no meaningful distinction between sales
contracts and leases for purposes of determining the enforceability of "as is" clauses.


 Application of Prudential to this lease


 Gym-N-I next argues that the "as is" clause cannot be enforced under the standards
set forth in Prudential and its progeny. Applying the Prudential factors, as set forth above, it is
undisputed that Finn and Caddell were familiar with the building space they were leasing and with
the needs of their business. In addition, Finn had been present when the fire marshal discussed the
installation of a sprinkler system with Snider. Moreover, before they signed the lease, both Finn and
Caddell knew that Snider had received bids for sprinkler systems but had ultimately decided not to
install one. Finn and Caddell were represented by counsel when they signed the lease. Their
deposition statements indicate that each was aware that the "as is" provision was in the lease and
each understood what it meant. Finally, as previously discussed, Finn and Caddell admit that Snider
did not commit knowing misrepresentation, concealment, or fraud. Based on these uncontested
facts, we hold that the Prudential factors are satisfied. 


 Effect of "as is" clause on claims associated with physical condition of property


 We now turn to Gym-N-I's contention that summary judgment was improper because
evidence in the record supports claims of negligence, breach of warranty, and fraud under the DTPA. 
A valid "as is" clause, like the one here, negates the causation element essential to recovery on
claims associated with the physical condition of the property. See Prudential Ins. Co., 896 S.W.2d
at 161; Lee, 120 S.W.3d at 467-68. "As is" clauses have been held applicable in the context of
causes of action based on fraud, negligence, breach of duty, and the DTPA. Prudential Ins. Co., 896
S.W.2d at 160-61 (where asbestos was discovered in commercial building, claims of fraud,
negligence, breach of duty of good faith and fair dealing, and violations of DTPA could not be
sustained because building was purchased "as is"); Larsen v. Carlene Langford & Assocs. Inc., 41
S.W.3d 245, 249-50, 253 (Tex. App.--Waco 2001, pet. denied) (in residential purchase, claims of
common law and statutory fraud, negligent misrepresentation, and violations of DTPA were
precluded because "as is" clause conclusively negated reliance element essential to recovery). 

 Gym-N-I's claims focus on Snider's failure to install a fire sprinkler system, a
potentially defective fire alarm system, and the building's wiring. All of these alleged defects relate
to the physical condition of the property before the lease was signed. Thus, as a matter of law, the
"as is" provision negated causation in each of the claims asserted against Snider by Gym-N-I. See
Prudential Ins. Co., 896 S.W.2d at 161. Put another way, Gym-N-I's agreement to accept the
premises "as is" effectively supercedes any fault of Snider's. See id. A defendant who negates at
least one of the elements of a cause of action is entitled to summary judgment. Randall's Food
Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). We find, therefore, that there were no
issues of genuine material fact regarding Gym-N-I's claims.


 Implied warranty of suitability


 Next, Gym-N-I attempts to distinguish its claim for breach of the implied warranty
of suitability on the basis that, as a matter of law, only an express agreement that the tenant will
repair certain defects can waive that warranty. See Davidow v. Inwood N. Prof'l Group-Phase I, 747
S.W.2d 373, 377 (Tex. 1988). The supreme court first adopted the implied warranty of suitability
in Davidow. 747 S.W.2d at 377. The implied warranty of suitability is an extension to commercial
leases of the implied warranty of habitability, which only applies to residential property. See id.
(citing Kamarath v. Bennett, 568 S.W.2d 658 (Tex. 1978) (comparing residential lease objective of
providing quarters suitable for living purposes with commercial lease objective of providing
premises suitable for desired commercial use)). The supreme court held that, unless the warranty
is waived, a landlord in a commercial lease impliedly warrants that facilities vital to the use of the
premises for their intended commercial purpose are free from latent defects and will remain in
suitable condition. Id. at 377. 

 Assuming that Gym-N-I's breach-of-warranty claim contains a causation element,
under Prudential, the "as is" clause would foreclose that claim. In addition, under Davidow, the "as
is" clause negates the implied warranty of suitability itself. Davidow predates Prudential, and we
see nothing in either case that would limit the effect of the "as is" clause in the manner Gym-N-I
suggests. While the supreme court in Davidow approved one means of waiving the implied warranty
of suitability--if "the parties to a lease expressly agree that the tenant will repair certain defects, then
the provisions of the lease will control"--it did not state that this is the only method by which the
implied warranty of suitability can be waived. See id., 747 S.W.2d at 377. Rather, the supreme
court explicitly stated that determination of whether there has been an actionable breach of the
implied warranty of suitability depends on the particular circumstances of the case. Id. One of the
factors to be considered in that analysis is "whether the tenant waived the defects." Id. Among other
factors a court may consider are: (1) the nature of the defect; (2) its effect on the tenant's use of the
premises; (3) the length of time the defect persisted; (4) the age of the structure; (5) the amount of
the rent; (6) the area in which the premises are located; and (7) whether the defect resulted from any
unusual or abnormal use by the tenant. Id. In short, Davidow indicates that there is more than one
way to override or waive the implied warranty of suitability. (8) See id.

 We find this interpretation of Davidow to be consistent with other areas of our law
of implied warranties. For example, the legislature has adopted the Uniform Commercial Code
("U.C.C."), including the U.C.C.'s implied warranties of "merchantability" and "fitness for a
particular purpose" provisions. See Tex. Bus. & Com. Code Ann. §§ 2.314-.315 (West 1994). 
These implied warranties may be excluded or modified by conspicuous written language mentioning
the implied warranty or even by an "as is" clause that makes plain that there is no implied warranty. 
Id. §§ 2.316(b), (c)(1) ("unless the circumstances indicate otherwise, all implied warranties are
excluded in expressions like 'as is,' 'with all faults' or other language . . . [which] makes plain that
there is no implied warranty"). The implied warranty of good workmanship may also be waived
contractually. See Centex Homes v. Buecher, 95 S.W.3d 266, 274-75 (Tex. 2002) (implied warranty
of good workmanship can be disclaimed when agreement provides for manner of performance or
quality of construction).

 We are mindful that the implied warranty of habitability generally cannot be waived. 
See id. at 274 (implied warranty of habitability may only be waived by disclosure of defects). 
Although the implied warranty of suitability has its legal roots in the implied warranty of habitability,
they are not identical legal concepts. In 2002, the supreme court outlined the policy concerns
associated with the sale of a residential home that support the implied warranty of habitability. See
Centex, 95 S.W.3d at 269-75. The court noted that "purchase of a [new] home is . . . in many
instances the most important transaction of a lifetime." Id. at 269 (quoting Humber v. Morton, 426
S.W.2d 554, 555 (Tex. 1968)). The court also noted that the implied warranty of habitability
protects "the average homebuyer who lacks the ability and expertise to discover defects in a new
house." Id. at 274. Such considerations, although not wholly without application, are less
persuasive in the context of commercial leases and the implied warranty of suitability. See Davidow,
747 S.W.2d at 376-77. In any event, as we have already noted, the supreme court has squarely ruled
that the implied warranty of suitability may be contractually waived. See id. at 377. Thus, it is clear
that the two warranties are not identical. Compare Centex, 95 S.W.3d at 275, with Davidow, 747
S.W.2d at 377. 

 In this case, we must decide whether this particular "as is" clause was sufficient to
waive the implied warranty of suitability. The lease in this case explicitly mentions that Snider made
no warranties, including the implied warranty of suitability. The "as is" provision was even
underlined and set in all-capitals for emphasis. See Procter, 47 S.W.3d at 834 (where court noted
that release language was capitalized so that there could be no confusion as to far-reaching extent
of release of liability). In addition, both Finn and Caddell testified in depositions that they realized
the "as is" provision was in the lease, were told by counsel that it highly favored Snider, and
understood the provision's intent and scope. Finally, as noted above, it is undisputed that Finn and
Caddell knew of the building's condition, including the absence of a sprinkler system and the fact
that the fire code issues had been a concern. Consequently, we find that the implied warranty of
suitability was waived in this case by the "as is" clause and that the district court acted appropriately
in granting summary judgment for Snider on Gym-N-I's breach of the implied warranty of suitability
claim.

 Having rejected all of Gym-N-I's arguments concerning the "as is" clause as a bar to
its claims, we overrule Gym-N-I's second issue.


CONCLUSION

 Having found that waiver provisions of the original lease were incorporated into the
holdover lease, that the "as is" waiver provision of the lease was valid, that the "as is" provision
waived the implied warranty of suitability, and that there were no genuine issues of material fact
preventing application of the "as is" clause, we have determined that the district court could have
appropriately relied on that clause to grant summary judgment in favor of Snider. We affirm the
judgment of the district court.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: February 3, 2005
1. Section 54-86(a) of the City of New Braunfels Code of Ordinances adopted "The Standard
Fire [Prevention] Code" published by the Southern Building Code Congress International, Inc. 
Section 3605 of the Standard Fire Prevention Code contains requirements for when an automatic fire
extinguishing system would be required. Buildings over 20,000 square feet that stored only
moderately combustible materials would require such a system. 
2. Friesenhahn explained that he compromised and only required installation of a four-foot
fire curtain on one of the walls. He also testified that Snider met this requirement.
3. Gym-N-I's suit originated as a third-party action in a subrogation suit. In the aftermath of
the fire, Gym-N-I contacted Snider proposing more than $193,000 to settle what it owed Snider
under the lease and other equipment rental agreements. Snider acknowledged receipt of all
obligations owed and executed a release and indemnity provision. Snider then received an additional
$422,221.81 in insurance proceeds from American Economy Insurance Company. American
Economy thereafter filed a subrogation suit against Gym-N-I to recover the money American
Economy had paid to Snider. American Economy claimed that flammable materials stored by
Gym-N-I were at least a partial cause of the fire and the resulting damages. Gym-N-I filed its third-party action against Snider in response to American Economy's subrogation action. A number of
other parties were named as defendants or third-party defendants, but this appeal concerns only Gym-N-I's claims against Snider.
4. The trial court granted partial summary judgment on all but the breach-of-contract claim,
which Gym-N-I and Snider later settled.
5. Gym-N-I also attacks Snider's reliance on the waiver of subrogation provision. Because
our disposition rests on our application of the "as is" clause, we need not reach this argument. 
6. The lease term provision reads as follows:



 TERM: Subject to and upon the terms and conditions as set forth herein, or
in any exhibit or addendum hereto, this lease shall continue in full force and
effect for a term of 36 months beginning on the 30th day of September, 1993
. . . and ending at midnight on the 29th day of September 1996, unless sooner
terminated or extended to a later date under any other term or provision
hereof.

7. For example, whether there was legal representation is pertinent to an assessment of the
"sophistication of the parties" and whether the agreement was "freely negotiated."
8. We note that our holding today conflicts with holdings of our sister courts in Houston and
Corpus Christi. See Parts Indus. Corp. v. A.V.A. Servs., Inc., 104 S.W.3d 671 (Tex. App.--Corpus
Christi 2003, no pet.); Gober v. Wright, 838 S.W.2d 794 (Tex. App.--Houston [1st Dist.] 1992, writ
denied). In Gober, which involved the lease of a commercial building and damages caused by a
leaking roof, the Houston court stated that the supreme court "intended to except from the lessor's
responsibility only those repairs the lessee willingly accepted as part of the bargain." Gober, 838
S.W.2d at 798. The court further stated that, "As a matter of law, the landlord's implied warranty
of suitability for commercial purposes is limited only by those specific terms in a commercial lease
whereby a tenant expressly agrees to repair certain defects." Id. The Corpus Christi court cited
Gober for this same exact language in holding that a tenant who had not expressly agreed to repair
the roof of a commercial rental property had not waived the implied warranty of suitability. Parts
Indus., 104 S.W.3d at 680-81. We decline to interpret Davidow so narrowly. Compare Davidow
v. Inwood N. Prof'l Group-Phase I, 747 S.W.2d 373, 377 (Tex. 1988), with Gober, 838 S.W.2d at
798, and Parts Indus. Corp., 104 S.W.3d at 680-81.