**Pearlie GRAY, Appellant,**

v.

**Alan FLOYD, Appellee.**

**No. 01–89–00327–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 18, 1990.

Neal H. Paster, Neal H. Paster & Associates, Houston, for appellant.

Jaime A. Drabek, Hirsch, Glover, Robinson & Sheiness, Houston, for appellee.

Before EVANS, C.J., and HUGHES, J., concur.

## OPINION

COHEN, Justice.

The question in this case is whether a jury may award an accident victim her surgeon's fee to treat accident-related injuries, but award nothing for the hospital and anesthesiologist fees incurred in the same surgery. Stated differently, may a jury find that surgery was necessary, but anesthesia and hospitalization were not, absent any proof to that effect, and despite uncontradicted proof to the contrary.

Alan Floyd drove his car into the rear end of Pearlie Gray's car in Houston, on January 3, 1987. Gray did not complain of injury at the time, no police or ambulance came to the scene, and the parties left the scene under their own power. Gray obtained medical treatment for the first time on February 12, complaining of pains in the neck, head, and shoulder. She was treated by Dr. Sassard, a board-certified orthopedic surgeon associated with Baylor College of Medicine. Eleven months after the accident, in December 1987, Gray complained to Dr. Sassard for the first time of foot pain, and stated that she had had such pain for eight or nine months. Dr. Sassard found that Gray suffered from Martin's neuroma, a condition of the nerve in the foot, and he performed surgery under general anesthesia on January 22, 1988.

Dr. Sassard's total bill for treating all of Gray's complaints was $1,728.00, the exact amount that the jury awarded for past medical expenses. Gray's only other claims for medical expenses were the hospital bill of $1,369.85 and the anesthesiologist's bill of $248.50, both relating solely to the foot surgery. Dr. Sassard was the only witness regarding the reasonableness and necessity of the fees, and his testimony was neither impeached nor contradicted. There was no dispute at trial that all three listed expenses were reasonable and necessary.

The hotly disputed issue at trial was whether Gray was injured in the auto accident, and if so, how much of her pain and medical expenses were due to the accident and how much were due to preexisting injuries. Gray had a long history of serious injuries and health problems before this accident.

The jury answered the following questions: [1]

### QUESTION No. 1

Do you find from a preponderance of the evidence that the Plaintiff sustained "personal injuries," as a result of the accident in question, as that term is defined below?

You are instructed that "personal injury," as used in this charge, means a hurt or damage done to an individual's person. Answer "We do" or "We do not".

ANSWER: WE DO

If you have answered Question No. 1 "We do," and only in that event then answer:

### QUESTION No. 2

From a preponderance of the evidence, what sum of money, if any, if paid now in cash, do you find would reasonably compensate Pearlie Gray for the injuries which you find from a preponderance of the evidence were proximately caused by the accident in question.

In reaching your conclusion, consider only the following elements and no others. In answering any element, do not include any amount, if any, for any condition for which you have placed a figure in any other element.

*Do not include any amount for any condition not resulting from the accident in question.*

*Do not include any amount for any condition existing before the accident in question, except to the extent, if any, that such other condition was aggrava-*

1. Floyd stipulated that his negligence caused the collision.

*ted by any injuries that resulted from the accident in question.*

Do not reduce the amount of damages allowed by reason of negligence, if any, on the part of Pearlie Gray.

Answer in dollars and cents, if any, for each item listed below.

a. Physical pain and mental anguish in the past. $1,500.00

b. Physical pain and mental anguish which, in reasonable probability, she will suffer in the future. $ 0.00

c. Reasonable expenses for necessary medical care in the past. $1,728.00

(Emphasis added.)

In point of error two, Gray contends the award of $1,728.00 for past medical expenses was against the great weight and preponderance of the evidence. In deciding this issue, we do not review the evidence in a vacuum. We measure it against the trial court's charge to the jury.

■ The jury is generally the sole judge of the credibility of the witnesses and the weight of their testimony. It may believe all, part, or none of the testimony, and is not required to believe even witnesses who are unimpeached and uncontradicted. *Tatum v. Huddleston*, 711 S.W.2d 367, 369 (Tex.App.—Texarkana 1986, no writ). That general rule does not apply to this case, however. The opinion testimony of an expert witness may be conclusive when the subject is one for experts alone, and the jury cannot properly be assumed to be able to reach correct conclusions of their own aided by their own knowledge and experience and the other evidence in the case. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). Whether surgery should be conducted in a hospital, and under general anesthesia, is a subject for experts. When a jury must be guided by expert opinion, the expert's opinion may be regarded as conclusive, if it is otherwise credible and free from contradiction and inconsistences. *Exxon Corp. v. West*, 543 S.W.2d 667, 673 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 154 (1977). Dr. Sassard's testimony concerning the reasonableness and necessity

of the hospital and anesthesiologist fee was, in addition to being unimpeached and uncontradicted, credible and consistent. Moreover, Floyd's failure to offer contrary evidence when he had an opportunity to do so constitutes corroboration of the testimony. *Mack v. Moore*, 669 S.W.2d 415, 419 (Tex.App.—Houston [1st Dist.] 1984, no writ).

■ We consider the two italicized jury instructions to be particularly significant. They clearly and repeatedly told the jury to award damages only for injuries suffered in this accident, and to give nothing for any pre-existing condition, unless it was aggravated by this accident. We are, of course, bound to presume that the jury followed these instructions, absent any proof to the contrary. *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex.1982). There is no proof to the contrary.

We also find it significant that the jury awarded the exact amount of Dr. Sassard's total bill, $1,728.00. The doctor's two-page itemized statement was before the jury, and is before us. It shows a conspicuous charge of $550.00 on January 22, 1988, the date of the surgery, for "removal of foot le," followed shortly after by items for "dressing" and "suture dressing." This $550.00 charge was Dr. Sassard's fee for surgery, and it is the only medical service charge on his bill over $75.00 and one of only two such charges over $40.00. The surgery fee was more than one-third of Dr. Sassard's total, excluding charges for medical reports. The vast majority of the many itemized charges are for $15.00 or $16.00 for ultrasound, massage, and hot packs.

Floyd vigorously contends that the $1,728.00 award was within the jury's discretion because Dr. Sassard was impeached "up and down" concerning whether the condition of Martin's neuroma, the sole reason for the surgery, was caused by the accident. Floyd points out Gray's history of pre-existing injuries, Gray's failure to complain for 11 months concerning her foot, and Dr. Sassard's testimony that he would question the connection between the

accident and Gray's foot injury if there were no symptoms for 11 months. Floyd argues that Gray's belated description of her symptoms was the only evidence that such symptoms arose within 11 months. Floyd further points out discrepancies in Gray's trial testimony and her deposition testimony that could have weakened her credibility.

These arguments are persuasive, but they were rejected by the jury. It found that Gray was hurt in the accident, and that her medical expenses were $1,728.00, *excluding* any amount for any condition not resulting from this accident. We agree, as Floyd contends, that the evidence would support a verdict, contrary to Dr. Sassard's testimony, that Gray was not injured in the accident. The evidence would also support a verdict that awarded less than the full amount of Dr. Sassard's bill. Unfortunately for Floyd, the jury expressly rejected these options.[2]

Floyd contends the jury could have found that the foot surgery was due in part, but not in whole, to the accident, and responded by awarding only part of the fees specifically related to it. This argument carries a seductive appeal because it reflects widely held notions among judges and lawyers about how juries operate. The difficulty is in reconciling such a verdict with this jury charge. In order to accept this argument, we would have to 1) ignore the court's instructions, 2) ignore the evidence, or 3) conclude that the jury's selection of the figure $1,728.00 was merely a coincidence. The first two choices we cannot make, and the third would be most unrealistic. Clearly, this jury knew that it was awarding all

of Dr. Sassard's bill, that the largest component of that bill, by far, was the surgery fee, and that no surgery fee should be awarded unless caused by Floyd's negligence. Having found that 100% of the surgery fee was necessary because of Floyd's negligence, the jury was not free to find, contrary to the undisputed credible expert testimony, that hospitalization and anesthesia for that surgery were unnecessary or worthless. Given this unique record, we hold that the award of $1,728.00 was against the great weight of the evidence.

Point of error two is sustained.

The judgment is reversed, and the cause is remanded.[3]

---

2. Floyd cites cases with similar facts upholding similar verdicts. *McGuffin v. Terrell,* 732 S.W.2d 425 (Tex.App.—Fort Worth 1987, no writ); *Tatum,* 711 S.W.2d 367; *Jackson v. Killough,* 615 S.W.2d 274 (Tex.Civ.App.—Dallas 1981, no writ); *Naranjo v. Cull,* 569 S.W.2d 529 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Clardy v. Dresser Indus., Inc.,* 559 S.W.2d 922 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ); *Hulsey v. Drake,* 457 S.W.2d 453 (Tex.Civ. App.—Austin 1970, writ ref'd n.r.e.). We consider them inapplicable. Only *Tatum* mentions a similar jury instruction, and it was neither discussed nor important there because the jury found no proximate cause. 711 S.W.2d at 368.

3. Gray has asked, in point of error one, that we render judgment for the balance of her medical fees, an additional $1,618.35 ($1,369.85 + $248.50), and sought a remand for a new trial only as an alternative remedy. She cites no authority allowing an appellate court to substitute its verdict for the jury's. *Compare, Mack v. Moore,* 669 S.W.2d 415, and *Exxon Corp. v. West,* 543 S.W.2d 667, both of which rendered the judgment that the trial *judge* should have rendered. We overrule point of error one and do not reach the remaining points of error.