J.Y. GOBER, Jr. and Elsie L. Gober, Appellants,

v.

R.A. WRIGHT and Bissonnet Superette, Inc., Appellees.

No. 01–90–00885–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1992.

Rehearing Denied Oct. 29, 1992.

J. Michael Fieglein, Galveston, for appellants.

Robert Bastien, Galveston, for appellees.

Before OLIVER–PARROTT, DUNN and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from the judgment entered in a landlord-tenant dispute awarding $6,083 in rentals to lessors/appellants, J.Y. Gober and Elsie L. Gober, and awarding

$7,000 in attorney's fees to lessee/appellee, R.A. Wright, on a counterclaim.

Lessees, Wright and Bissonnet Superette, Inc., sued lessors for reformation of the lease on a commercial building and damages caused by the building's leaky roof; lessors answered with this counterclaim for breach of the terms of the lease. The trial court severed lessors' counterclaim. As counter-plaintiffs in the severed action, lessees asserted claims including breach of various covenants in the lease and breach of the implied warranty of suitability of the premises for commercial purposes. This appeal follows the trial of, and entry of judgment in, lessors' severed action. We affirm in part, reverse in part, and remand for further proceedings.

In January 1977, the parties entered into a commercial lease agreement for a building in Galveston, where lessees intended to operate a retail grocery store. Although the lease allowed the original lessees to sublet the premises without the lessors' permission, the original lessees remained liable. In 1985, lessee R.A. Wright sold the grocery business and assigned the lease to M.D. Wright, who is not a party to this proceeding.

Terms of the lease required lessees to surrender the premises in good condition at the expiration of the lease, reasonable wear and damage by the elements excepted. Further, if the premises were damaged by storm or "other actions of the elements," lessors were required to make repairs and abate rentals until completion of repairs, or the lease would terminate. Lessors were responsible for repair of the roof and exterior walls; lessees were responsible for maintaining the interior and air conditioning and heating equipment, and for making necessary repairs to or replacement of the equipment.

Trial testimony indicated that deterioration of the building's interior due to roof leakage was evident as early as 1985. Witnesses testified that the air conditioning ceased to function in 1983, apparently as a result of hurricane damage. Lessees stopped their retail activities on the premises by April 1988, and abandoned the building and ceased rental payments in December 1989. Lessees sued lessors for reformation of the lease and damages caused by the leaky roof; lessors answered with this now severed counterclaim.

In their first point of error, lessors contend the trial court erred: (1) in failing to enter judgment based on the testimony of their expert witnesses concerning reasonable costs of necessary repairs, rather than upon the jury's answer to a question on that issue; or, alternatively, (2) in failing to grant a new trial on that issue. Lessors also complain in this point that the jury's findings are contrary to the evidence in the record. We interpret this as a complaint of legal insufficiency, or that there is no evidence to support the jury's finding for lessors of only $6,083 in damages.

This point is multifarious; however, we will consider lessors' complaints because we are able to identify the issues urged from the point and argument. *Turner v. Turner*, 384 S.W.2d 195, 200 (Tex.Civ. App.—Tyler 1964, no writ); *Gulf Ins. Co. v. Ball*, 324 S.W.2d 605, 606–607 (Tex.Civ. App.—Amarillo 1959, writ ref'd n.r.e.). Thus, we examine (1) the court's refusal to enter judgment on lessors' evidence, and (2) lessors' contention that the evidence is legally insufficient.

Lessors introduced trial testimony from two expert witnesses—persons who had repeatedly done work for lessors—on the issue of costs of reasonable repairs to the air conditioning system, heating and ventilating system, electrical system, and interior doors and walls. Lessors contend this testimony was uncontroverted and unimpeached, and the trial court should have entered judgment in their favor in the amount of $32,165.25, without submitting the issue to the jury.

Lessees respond that testimony from lessors' expert witnesses was subject to contradiction and impeachment, and that the jury properly considered various amounts the expert witnesses estimated for repairs and replacements as being subject to one or more of the relevant exceptions in the lease's terms. The record shows that lessors' estimate of $12,675 for replacement of roof air conditioning units included at

least $5,000 for repair of duct work, which could be considered within the lease's exception for "wear and damage by the elements." Lessees elicited testimony from lessors' expert on interior repairs that at least $9,210 of his estimate included costs that were assigned to lessors under the judgment for lessees in the earlier severed action. On cross-examination, lessees elicited testimony from lessors' witness that his estimates for repair to roof-mounted refrigeration units might include as much as $10,000 for equipment owned by lessees, and not subject to lease terms. Lessees impeached lessors' expert witness on electrical repairs regarding his actual knowledge of conditions of the building roof at time of trial; he admitted that $3,300 of the estimated cost for welding and painting roof-mounted equipment was for lessees' refrigeration units. Evidence showed that other repair costs lessors sought to recover from lessees were attributable to reasonable wear and usage.

 In support of their proposition that their expert witnesses' evidence on the issue of damages was conclusive, lessors cite our holding in *Gray v. Floyd*, 783 S.W.2d 214 (Tex.App.—Houston [1st Dist.] 1990, no writ). *Gray* held that the general rule that a jury sits as sole judge of witnesses' credibility and weight of the evidence does not always apply. An expert witness's opinion testimony may be conclusive when the subject *is one for experts alone*, and the jury cannot properly be assumed to be able to reach correct conclusions of their own, aided only by their knowledge and experience, and other evidence in the case. *Id.* at 216. Further, if the jury must be guided by expert opinion, such opinion may be conclusive if it is otherwise *free from contradiction and inconsistency. Id.; Exxon v. West*, 543 S.W.2d 667, 672 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 154 (1977).

*Gray* involved the uncontradicted, unimpeached, credible, and consistent expert testimony of a medical doctor regarding reasonable fees for hospital and anesthesiology services. *Gray*, 783 S.W.2d at 216. *West* turned on the corroborated, undisput-

ed, and consistent testimony of experts in the highly technical area of petroleum reservoir volumetric analysis, 543 S.W.2d at 673, and held that where no inconsistency or reasonable suspicion as to truth was raised, expert testimony might be taken as conclusive on the issue. *Id.*

By contrast, the reasonable cost to repair a building or its fixtures represents a far less arcane issue, especially when, as here, it is challenged on vigorous cross-examination. In *McGalliard v. Kuhlmann*, 722 S.W.2d 694 (Tex.1986), the Texas Supreme Court specifically addressed the conclusiveness of expert witnesses in building repair cases. In such cases, the Court held, opinion testimony does not establish any material fact issue as a matter of law, and the uncontradicted testimony of interested witnesses raises no more than a fact issue unless that testimony is clear, direct, and positive, and no circumstances are in evidence which tend to discredit or impeach that testimony. *Id.* at 697.

*McGalliard* held that the subject of building repairs is not one for experts or skilled witnesses alone (particularly when, as in our case, there are circumstances that tend to discredit the expert's testimony). *Id.* at 697. *McGalliard* did involve repairs to a private residence; however, total damages and complexity of the issues far exceeded those in the present case. Triers of fact must be afforded considerable discretion when evaluating opinion testimony on building and fixture repair damages. We hold that lessors' expert witnesses provided no more than some probative evidence of the cost of reasonable repairs, which the jury was qualified to consider in light of the expert's knowledge and experience, along with the circumstances and other evidence before them.

 Legal insufficiency points of error can be sustained only when the record discloses one or more of the following: 1) a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla; or 4) the

evidence establishes conclusively the opposite of a vital fact. *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex.App.— Houston [1st Dist.] 1988, no writ); *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). Our examination of the record reveals that none of these circumstances is present. The jury was properly charged with a question on the amount of damages, and it resolved any inconsistencies in the testimony. The record contains sufficient evidence to support the jury's finding. *See McGalliard,* 722 S.W.2d at 697 (in bench trial, expert opinion testimony of respondent Kuhlman's witness McFarland did not establish the cost of repairs as a matter of law; the other record evidence of cost of repairs was legally sufficient to support trial court's finding on damages). Point of error number one is overruled.

■ In their second point of error, lessors contend the trial court erred in submitting a question on the suitability of the premises for lessees' intended commercial use. Lessors insist the rule of *Davidow v. Inwood North Professional Group* does not apply here because of that decision's exception:

> [T]here is an implied warranty of suitability by the landlord in a commercial lease that the premises are suitable for their intended commercial purpose. This warranty means that at the inception of the lease there are no latent defects in the facilities that are vital to the use of the premises for their intended commercial purpose and that these essential facilities will remain in a suitable condition. *If, however, the parties to a lease expressly agree that the tenant will repair certain defects, then the provisions of the lease will control.*

*Davidow,* 747 S.W.2d 373, 377 (Tex.1988) (emphasis added). The Texas Supreme Court intended this warranty to cover all latent defects in the "essential facilities" of leased premises, and further intended to except from the lessor's responsibility *only* those repairs the lessee willingly accepted as part of the bargain. It is uncontroverted in this case that the lessors assumed responsibility for repairs to the roof, under both the application of *Davidow* and the lease terms. Lessees abandoned the premises, and the pleadings and the testimony raised a fact issue regarding the reason for the abandonment and subsequent liability for rent and other costs.

*Davidow* instructs that

> [a] commercial landlord impliedly represents that the premises are in fact suitable for that use and will remain in a suitable condition. The tenant's obligation to pay rent and the landlord's implied warranty of suitability are therefore mutually dependent. The existence of a breach of the implied warranty of suitability in commercial leases is usually a fact question to be determined from the particular circumstances of each case.

747 S.W.2d at 377. Thus, the jury's fact finding on the existence of a breach of the warranty was necessary to establish whether lessees' obligation to pay rent had ceased and, if so, upon what date.

■ As a matter of law, the landlord's implied warranty of suitability for commercial purposes is limited only by those specific terms in a commercial lease whereby a tenant expressly agrees to repair certain defects. Essential facilities vital to the intended commercial use of the premises remain the responsibility of the landlord, unless otherwise provided by the parties. *Davidow,* 747 S.W.2d at 377. Lessors' second point of error is overruled.

■ In their third point of error, lessors contend that the jury's finding that no rentals or insurance or tax payments were due to lessors was against the great weight and preponderance of the evidence, and that the trial court erred in entering judgment on that finding. At issue is lessors' claim for reimbursement for $2,322 in property taxes and $277 in insurance premiums that lessors paid in 1989.

The issue of which party owed these items was contested at trial, and testimony shows that at least a portion of lessors' insurance payment may have been for coverage limits in excess of what lessors were required to furnish under the lease terms. Under point of error two, we upheld the

jury's finding that the premises were unsuitable for their intended commercial purposes after June 2, 1988. This finding relieved lessees from their obligation to pay any rent after that date. *Davidow,* 747 S.W.2d at 377.

Lessors' reliance on *Sharpe v. Safway Scaffolds Co. of Houston,* 687 S.W.2d 386 (Tex.App.—Houston [14th Dist.] 1985, no writ), is misplaced. *Sharpe* recognized an exception to automatic application of the general rule that a party who has the burden of proof on an issue, and who fails to obtain a favorable finding on liability issues, fails to show harm when the jury finds that that party suffered no damages. *Id.* at 391, 392 (citing at 391, *Southern Pine Lumber Co. v. Andrade,* 132 Tex. 372, 124 S.W.2d 334 (1939)). However, where the record shows that a finding of no damages may have resulted from impeachment of the plaintiff, or that the damages issue was contested and the finding justified, *Sharpe* held that application of the general rule makes sense. *Id.* at 392. We find no merit to lessors' contention that the trial court erred in entering judgment on the jury's finding. *See Johnson v. Whitehurst,* 652 S.W.2d 441, 449 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) (where jury has answered special issues on liability in the negative, failure of jury to award damages is not error). Lessors' third point of error is overruled.

■ In their fourth point of error, lessors contend the trial court erred in refusing to permit them to present both their expert testimony and their jury question on the issue of reasonable and necessary attorney's fees.

Lessors' trial counsel attempted to offer his own testimony regarding attorney's fees incurred in this case. Lessees objected on grounds that, although counsel had been designated as an expert witness in a timely supplemental response to interrogatories filed pursuant to TEX.R.CIV.P. 166b(6)(b), the supplemental response was signed by counsel himself, not by a party. Lessees argue that answers to interrogatories, whether original or supplemental, must conform to TEX.R.CIV.P. 168(5) and be signed and verified by a *party.* Further, lessees urge, the provisions of TEX.R.CIV.P.

14, which allow counsel to sign pleadings as agent for a party, are internally proscribed in the application of rule 168(5). We disagree.

Rule 166b(6)(b) requires that interrogatories be supplemented and that expert witnesses not previously disclosed be disclosed "as soon as practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court." Rule 168(5) provides that answers to interrogatories "shall be signed and verified by the person making them and the provisions of Rule 14 [allowing signing by attorney] shall not apply."

As we stated in *Weaver v. United States Testing Co., Inc.,* No. 01–90–01143–CV (Tex.App.—Houston [1st Dist.], July 30, 1992, n.w.h.), 1992 WL 178660 (not yet reported):

Although the procedural requirements announced in rule 168(5) have been held to apply to original answers to interrogatories in writing, they do not apply to timely supplemental answers to interrogatories in writing. *See Circle Y of Yoakum v. Blevins,* 826 S.W.2d 753, 756 (Tex.App.—Texarkana 1992, writ denied); *Jones v. Kinder,* 807 S.W.2d 868, 872–73 (Tex.App.—Amarillo 1991, no writ). The *Jones* case held that the failure of a party to verify his supplemental answer was not error because there is no specific verification requirement in TEX.R.CIV.P. 166b(6)(b)'s duty to supplement. *Jones,* 807 S.W.2d at 871. In addition to there being no specific verification requirement in rule 166b(6)(b), there is no specific requirement that the party sign a supplemental response. TEX.R.CIV.P. 166(b)(6)(b). Therefore, the reasoning of *Jones* applies to the failure of a party to sign a supplemental response, as well as to a party's failure to verify his supplemental response.

Accordingly, the trial court erred in refusing to permit lessors to present their expert testimony and their jury question on the issue of reasonable and necessary attorney's fees. Lessors' fourth point of error is sustained.

That portion of the judgment awarding lessors $6,083 in damages is affirmed; that portion of the judgment denying lessors their attorney's fees is reversed and remanded for further proceedings consistent with this opinion.