NUMBER 13-99-509-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 



 

PARTS INDUSTRIES CORPORATION,                                      Appellant,

 

                                                   v.

 

A.V.A
SERVICES, INC.,                                                          Appellee.

 



 

                        On appeal from the 149th District Court

                                  of Brazoria
County, Texas.

 

 



                                   O P I N I O N

 

         Before Chief Justice Valdez and Justices Castillo
and Amidei[1]

                                  Opinion by Justice Amidei

 








A.V.A. Services, Inc.,
appellee (AVA) sued GPK Parts Industries, Inc., appellant (GPK) for breach of a
commercial real estate lease and to enforce an option to purchase
thereunder.  GPK appeals from an adverse
jury verdict and judgment in the amount of $43,336.19, plus 10% interest and
attorney=s fees, alleging
nineteen issues for our review.  GPK=s primary contention
is that as a matter of law AVA waived its cause of action for breach of implied
warranty of suitability for commercial purposes, and the jury should have
awarded it delinquent rent, holdover rent, penalties and late fees which it
sought in its counterclaim.  We affirm.

Factual Background








GPK leased a warehouse
in Beaumont to AVA.  AVA=s president, Mr.
Dorset and one of its employees, Mr. Light, inspected the premises several
times prior to signing the lease on May 31, 1990.  During the first inspection, they noticed the
roof leaked even though the electricity was off.  GPK assured AVA the warehouse was in good
condition but there were many latent defects, including massive roof leaks and
electrical problems caused by leaking water which could not be discovered until
the electricity was turned on. GPK=s agent refused to
turn on the electricity until the lease was signed.  AVA certified that it inspected the
warehouse, accepted it in its Aas is condition,@ as suitable Afor the purposes for
which same are leased.A[2]  In order to accommodate AVA, GPK made
numerous modifications and repairs for which it was not responsible under the
lease.













The lease provided
that GPK shall keep the roof in good repair,[3]
and in the event GPK breached any obligation under the lease AVA would have, in
addition to any other remedies provided by law, statute or ordinance,[4] the cumulative right to (1) either terminate
the lease, or (2) make the necessary repairs (to be reimbursed by GPK)[5].   The
use of any one right or remedy by either party shall not preclude or waive its
right to use any or all other remedies.[6]  The lease obligated  AVA to pay $4,000.00 monthly rental payments
from December 1, 1990, to June 30, 1992 and $5,500.00 per month for the last
twenty-four months of the lease or until June 30, 1994, plus late charges and
penalties in the event of late payments as therein provided.  In the event of Aholding over@ the lease would
become a tenancy from month to month and the lease rental obligation of AVA
would increase to $6,000.00 per month. 
Although the 48-2 month lease term
began on June 15, 1990, rent payments were abated for five months by GPK.  Complaints[7]
of a leaky roof were made to the real estate agent[8]
and although some repairs were made or attempted by a company hired by the
agent and some repairs were made by AVA, AVA claimed the repairs were not
successful and that it could not afford to make all the necessary roof repairs
or vacate the warehouse and leave $40,000.00 it invested in the lease.  Also, AVA claimed its intent was to purchase
the warehouse property under the option provided in the lease, and therefore
did not wish to terminate the lease. 
GPK, through its agent, the real estate agent, undertook to make roof
repairs pursuant to the lease, even if inadequate.  AVA chose to not make the necessary roof
repairs because of financial limitations, its desire to protect its option to
purchase rights and to reserve its right to reimbursement (or a new roof upon
purchase of the property).  When he
received repair requests, Mr. Carey had Perkins Roofing Company repair the
roof.  AVA never complained about the
roof repairs by Perkins.  AVA solicited a
bid from Perkins to replace the roof after AVA became a holdover tenant.  The roof did not require replacement until
November 1993. The real estate agent informed AVA it could replace the
roof.  AVA did not replace the roof or
request that it be replaced until it attempted to exercise the option to
purchase. When GPK became aware of AVA=s complaints about the
roof, GPK lowered the option purchase price to accommodate the replacement of
the roof.  On June 10, 1994, AVA
exercised its option to purchase the warehouse for $325,000.00, expressly
subject to financing.  The original
purchase price of $400,000.00 was lowered by $75,000.00, the amount of the
estimated roof replacement.  AVA did not
close the option purchase during the time provided because it did not obtain
the required financing.  AVA refused to
pay rent as a holdover tenant, and GPK filed eviction proceedings on April 11,
1995.  The amount of back rent and
penalties totaled $451,000.00, and the amount of attorney=s fees sought by GPK
was $15,000.00.  A lis pendens notice
filed by AVA on September 11, 1995 allegedly prevented GPK from selling the
warehouse for over three years.  AVA
alleged the leaky roof caused damage to its products stored in the warehouse,
its vending machines and equipment, and its trucks due to rusty water from the
roof dripping on the trucks.  AVA
presented GPK with a demand for damages caused by the leaking roof.

Jury Findings

The answer to jury
question number one finds that GPK failed to comply with the lease, but despite
the accompanying instruction and definition as to implied warranty of
suitability the jury did not find nor was it required to find the non
compliance was a breach of the express obligation to repair the roof or a
breach of implied warranty of suitability.








In answer to jury
question number two the jury found that GPK=s failure to comply with the lease was not
excused.  This question was accompanied
by instructions that GPK is excused by AVA=s previous failure to
comply with a material obligation of the same agreement or if compliance is
waived by AVA.  Waiver was defined as an
intentional surrender of a known right or intentional conduct inconsistent with
claiming the right.

The jury found in
answer to jury question number three that AVA failed to comply with the lease,
and in answer to question number four that AVA=s failure to comply was excused.  Question number four was accompanied by the
instruction that failure to comply by AVA is excused by GPK=s previous failure to
comply with a material obligation of the same agreement, if so found, or by GPK=s breach of its
implied warranty of suitability for commercial purposes, if so found.

Jury question number
five inquired as to AVA=s damages, and the
jury found AVA was damaged $10,000.00 due to water damaged inventory or
product, $12,500.00 costs to repair damaged equipment, $10,000.00 costs to
repair damaged vehicles, and nothing for increased operational expense due to
personnel turnover.

The jury denied GPK
any recovery for rentals by not answering jury question number six.

Jury questions seven,
eight, nine and ten inquiring as to the parties= conduct and obligations concerning the option to
purchase agreement were answered in favor of GPK.

The jury found in
question number 11 that the lis pendens notice filed by AVA should be removed.








Answers to jury
questions 12 and 13 found the amount of reasonable attorney=s fees for AVA and GPK
respectively in the amount of $20,000.00 for the trial, $4,500.00 for an appeal
to the court of appeals, $1,000.00 in the event of an application for writ of
error to the Supreme Court of Texas, and $3,000.00 if application for writ of
error is granted by the Supreme Court of Texas. 
The trial court=s judgment awards AVA
the amounts of attorney=s fees as found by the
jury in jury question number 12 and properly corrected  the wording from Awrit of error@ to Apetition for review@to acknowledge the
change of wording in the 1997 amendments to the Texas Rules of Appellate
Procedure[9].

Standard of Review








When reviewing the
legal sufficiency of the evidence, we consider only the evidence and inferences
tending to support the trial court=s finding,
disregarding all contrary evidence and inferences.  Southwestern Bell Mobile Sys. v. Franco,
971 S.W.2d 52, 54 (Tex. 1998)(per curiam); Sterner v. Marathon Oil Co.,
767 S.W.2d 686, 690(Tex. 1989).  If there
is no evidence to support the finding, we must then examine the entire record
to determine if the contrary proposition is established as a matter of
law.  Id. 
Only if the contrary proposition is established conclusively by the
evidence, will the issue be sustained.  Perry
Homes v. Altwattari, 33 S.W.2d 376, 383 (Tex. App.BFort Worth 2000, pet.
denied).  A Ano evidence@ point will be
sustained if there is no more than a scintilla of evidence to support the
finding.  Gen. Motors Corp. v. Sanchez,
997 S.W.2d 584, 588(Tex. 1999).  If the
evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about  a vital fact=s existence, more than
a scintilla of evidence exists.  Burroughs
Wellcome Co. v. Cyre, 907 S.W.2d 497, 499 (Tex. 1995); Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).  In conducting a factual sufficiency review,
we must examine the entire record, considering both the evidence in favor of,
and contrary to, the challenged finding, and set aside the finding only if it
is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986) (per curiam).








When the
interpretation of a contract is in issue, the trial court must first determine
whether the provisions in question are ambiguous.  Lopez v. Munoz, Hockema & Reed, 22
S.W.3d 857, 861 (Tex. 2000).  The
question of whether a contract is ambiguous is a question of law for the trial
court=s determination.  Id. 
A contract is ambiguous if it is reasonably susceptible to more than one
meaning.  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).  Neither of
the parties argue that the terms of the lease are ambiguous; they simply
disagree over its construction and interpretation.  A disagreement over the meaning of a contract
provision does not render the provision ambiguous.  Pegasus Energy Group, Inc. v. Cheyenne
Petroleum Co., 3 S.W.3d 112, 120-21 (Tex. App.BCorpus Christi 1999,
pet. denied).  When the parties disagree
over the meaning of an unambiguous contract, the court must determine the
parties= intent by examining
and considering the entire writing in an effort to give effect to the parties= intentions as
expressed in the contract.  Coker,
650 S.W.2d at 393.  The intent of the
parties must be taken from the agreement itself, not from the parties= present
interpretation, and the agreement must be enforced as it is written.  Pegasus Energy, 3 S.W.3d at 121.  Legal conclusions of the trial court are
always reviewable and the appellate court is not obliged to give any particular
deference to those conclusions.  Id.  The appellate court reviews questions of law
de novo.  Id.

The implied warranty
of suitability by the landlord in a commercial lease that the premises are
suitable for their intended commercial purpose means that at the inception of
the lease there are no latent defects in the facilities that are vital to the
use of the premises for their intended commercial purposes and these essential
facilities will remain in suitable condition. 
Davidow v. Inwood North  Prof.
Group - Phase I, 747 S.W.2d 373, 377 (Tex. 1988).  The breach of such warranty is usually a fact
question to be determined from the particular circumstance of each case.  Id. 
Among the factors to be considered when determining whether there has
been a breach of warranty is whether the tenant waived the defects.  Id.

Issues Presented

GPK=s issues one, two,
three, six, and eight are stated as follows:

1. The trial court
erred in submitting Question No. 1 to the jury, because the construction and
application of an unambiguous commercial lease is a question of law for the
court.

 








2. The trial court
erred in submitting Question No.1 to the jury, because Appellee waived its
cause of action for Appellant=s breach of warranty
of suitability.

 

3. The trial court
erred in rendering judgment in favor of Appellee for Appellant=s breach of a warranty
of suitability, because Appellee waived its recovery of any damages for
Appellant=s breach of a
warranty, or alternatively, Appellee=s claim for damages is
legally barred.

 

6. The trial court
erred in submitting Question No. 2 to the jury, because Appellee waived  its claim for appellant=s breach of a warranty
of suitability.

 

8. The trial court
erred in submitting jury Question No. 2 (inquiring whether Appellant=s breach of warranty
was excused), because the interpretation and application of an unambiguous
lease is a question of law for the court.

 








GPK correctly states
that the lease was admitted into evidence, and neither party claimed it was
ambiguous, but does not explain or develop an argument to show how jury
questions numbers one and two as submitted constituted an improper construction
of the lease by the trial court. 
Question number one although broad only inquires as to whether GPK
complied with the lease as a matter of fact. 
Question number two doesn=t inquire whether GPK=s breach of warranty
was excused as claimed by GPK, but only inquires whether any lack of compliance
of the lease was excused.  Jury questions
numbers one and two do not interpret or construe the meaning of the lease. GPK
waived any complaint by failing to object to the submission of the question on
the grounds it improperly construed and applied an unambiguous commercial lease
which was properly a question of law for the court.  Tex. R. App. P. 33.1; Tex. R. Civ. P. 274.  If such an objection had been made by GPK,
the trial court would not have erred by overruling same.  The jury=s answers to questions
numbers one and two in favor of AVA could have been, but were not necessarily
based on the definition of AImplied Warranty of
suitability for commercial purpose@ included in the
charge.  It could have been based on the
jury=s belief that GPK
failed to comply with the express obligation to repair the roof as it does not
limit the inquiry to only whether there was a breach of warranty of
suitability.  GPK cites no authority to
support its claim the trial court erred in submitting jury questions numbers
one and two because of an improper interpretation of the lease as claimed in
its issues numbers one and eight.

GPK=s issues two, three,
six and eight argue that because as a matter of law AVA waived its breach of
warranty of suitability cause of action the trial court erred in submitting
jury questions numbers one and two and rendering judgment for AVA.













Waiver is normally a
fact question.  Caldwell v. Callender
Lake Prop. Owners Imp. Asso., 888 S.W.2d 903, 910 (Tex. App.BTexarkana 1994, writ
denied).  The case cited by GPK, Alford
Meroney & Co. v. Rowe, 619 S.W.2d 210 (Tex. Civ. App.BAmarillo 1981, writ
ref=d n.r.e.), involved
the submission of waiver as a fact issue, not a matter of law finding by the
court.  GPK argues that Texas courts have
held the waiver doctrine is applicable in the commercial lease setting, and
cites three cases which involve contract non waiver provisions, however, these
cases do not support waiver as a matter of law in the commercial lease setting
and are not in point factually.[10]  The case cited by GPK which held waiver as a
matter of law involved an interest in a natural gas fractionation plant and the
alleged violation of an operating agreement, not a commercial lease or an
implied warranty of suitability with lease provisions as in this case.  Tenneco, Inc. v. Enter. Prod. Co, 925
S.W.2d 640, 643 (Tex. 1996).  Even if a
party=s silence or inaction
for a period of three years without attempting to enforce its rights was held
to be a waiver as a matter of law in a case involving a commercial lease, there
is evidence in this case indicating AVA did not intend to waive any remedy. AVA
immediately complained upon moving into the warehouse.  There were at least 37 letters complaining of
the roof leaks and demanding GPK comply with its lease obligation to repair the
roof.  The letters cover a two year
period.  Despite assurances that the
warehouse was in good condition, there were many latent defects, including massive
roof leaks and electrical problems caused by leaking water.  The defects could not be discovered before
the lease was signed because there was no electricity, and GPK=s agent, American Real
Estate, refused to turn on the power until the lease was signed.  AVA presented GPK with a demand for damages
caused by the leaking roof.  AVA
attempted to offset repair costs it incurred because of the defects and leaking
roof.  One time AVA refused to pay rent
as an offset, but was threatened with eviction. 
Once GPK beached the lease when AVA attempted to be reimbursed for roof
repairs, AVA was not obligated to terminate the lease.  GPK could not gain termination of the lease
by simply denying AVA=s right to have roof
repair expenses reimbursed by GPK.  The
lease provided AVA the remedy to terminate the lease if GPK failed to repair
the roof but did not require AVA to terminate the lease to recover the roof
repair expense from GPK.  AVA was not
financially able to terminate the lease and lose its $40,000.00 investment in
the lease to make it suitable, and desired to purchase the property under the
option to purchase.  AVA had good faith
reasons to not terminate the lease.  GPK
cites no authority or lease provisions which support its argument that
termination was AVA=s exclusive remedy, or
that AVA=s claim for damages is
somehow barred.

By contending its
waiver defense was proved as a matter of law, GPK attacks the legal sufficiency
of the evidence supporting the jury findings of no waiver and must show on
appeal the evidence conclusively established all vital facts in support of
waiver.  Victoria Bank & Trust Co.
v. Brady, 811 S.W.2d 931, 940 (Tex. 1991); Pacific Employers Ins. Co. v.
Dayton, 958 S.W.2d 452, 455 (Tex.App.BFort Worth 1997, pet.
denied).  In reviewing a Amatter of law@ challenge, this Court
must employ a two prong test.  Dayton,
958 S.W.2d at 455 (citing Brady, 811 S.W.2d at 940). First we must
examine the record for evidence that supports the finding, while ignoring all
evidence to the contrary.  Sterner v.
Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).  If there is no evidence to support the
finding, we must then examine the entire record to determine if the contrary
proposition is established conclusively by the evidence.  Perry Homes v. Alwattari, 33 S.W.2d
376, 383 (Tex. App.BFort Worth 2000, pet.
denied).








The lease clearly
provides that GPK is responsible for roof repairs.  Grant Dorsett, president of AVA Services,
Inc., testified that AVA made numerous demands for repairs to the roof and also
made some repairs related to the leaky roof. 
In accordance with the lease, AVA requested reimbursement from GPK for
the repairs and damages; however, GPK did not tender any reimbursement.  This constitutes more than a scintilla of
evidence to support the jury=s finding that GPK
failed to comply with the lease. 
Accordingly, we find that GPK failed to meet the first prong of its Amatter of law@ challenge.  Sterner, 767 S.W.2d at 690.

As a matter of law,
the landlord=s implied warranty of
suitability for commercial purposes is limited only by those specific terms in
a commercial lease whereby a tenant expressly agrees to repair certain
defects.  Gober v. Wright, 838
S.W.2d 794,798(Tex. App.BHouston [1st Dist.]
1992, writ denied).  Under paragraph
number 23 of the lease in this case AVA did not in specific terms expressly
agree to repair defects in the roof.  Id.  The provision affords AVA with the optional
remedy of termination or to make repairs GPK was obligated to make, but AVA was
not required to take either option to preserve any rights under the lease.  We hold as a matter of law GPK=s implied warranty of
suitability for commercial purposes was not limited by paragraph 23, and AVA
was entitled to recover on a breach of GPK=s implied warranty of
suitability for commercial purposes.








In any event, AVA
could not waive its remedy of breach of implied warranty by using its remedy of
an action based on breach of the express lease provision to repair the roof
because the non waiver of remedies provision in paragraph 29 of the lease
prohibits same.  The jury=s answer to jury
question number two in effect found that AVA did not waive any right or
remedy.   AVA=s conduct did not
constitute waiver as a matter of law.  

AVA accepted the
warehouse in its as is condition[11] and
required no repairs or refurbishment prior to moving in except as noted in the
Special Provisions paragraph of the lease. 
However, GPK cites no authority to support its argument that such
acceptance by AVA relieved GPK of its obligation to repair the roof as
expressed in the lease, or otherwise.

GPK=s issues numbers one,
two, three, six, and eight are overruled.

GPK=s issue number four
states as follows:

4. The jury finding
that Appellant breached a warranty of suitability is against the great weight
and preponderance of the evidence; or alternatively is not supported by
sufficient evidence.

 








GPK=s issue number four
assumes jury question number one found GPK breached a warranty of
suitability.  As discussed above, jury
question number one did not require the jury to find for AVA on a theory of
breach of implied warranty of suitability, but it asks if GPK failed to comply
with the lease.  GPK had a duty to repair
the roof.  We will review the evidence to
determine whether it supports either a finding of breach of warranty of
suitability or a finding of breach of express provisions of the lease.  GPK argues that the evidence shows it did not
breach a warranty because, (1) AVA complained of roof leaks to the real estate
agent, and never complained that the company hired to fix the roof did a poor
job; and (2) that AVA chose not to repair or replace the roof on its own even
though it had the right to do so under paragraph 23 of the lease.  GPK admits it required AVA to notify the real
estate agent in the event of roof leaks, and then complains that it had no
notice of AVA=s complaints of roof
leaks which were directed to the agent.

GPK did not deny the
real estate agent was its agent for accepting AVA=s complaints of roof leaks.  AVA continued to complain of the leaky roof
after the repair work performed by the company hired by the real estate
agent.  It was undisputed the roof was
never adequately repaired.  There were at
least 37 letters complaining of the roof leaks and demanding that GPK comply
with its obligation to repair the roof. 
One time, when AVA attempted to offset roof repair costs it incurred, it
was threatened with eviction.  AVA was
financially unable to make all of the necessary roof repairs. There was no
evidence that AVA excused GPK=s obligation to repair
the roof or otherwise maintain the warehouse. 
GPK attempted to prove AVA waived GPK=s obligations by arguing the fact AVA failed to
repair the roof or terminate the lease under paragraph 23 of the lease, but did
not allege or prove AVA waived the non waiver provision in paragraph 29 of the
lease.








Because GPK does not
otherwise specify the evidence it considers to be no more than a mere scintilla
or cite any rule of law barring the court from giving weight to any of the
evidence there is a complete absence of evidence of GPK=s alleged
defense.  Juliette Fowler Homes, Inc.
v. Welch Assocs., 793 S.W.2d 660, 666n.9 (Tex. 1990).  The evidence GPK complains of is not clearly
wrong and unjust, insufficient or contrary to the overwhelming weight of the
evidence or insufficient. Cain, 709 S.W.2d at 176.

GPK=s issue number four is
overruled.

GPK=s issue number five
states as follows:

5. The trial court
erred by providing a definition of Aimplied warranty of
suitability for commercial purposes@ in the jury charge
that was erroneous. This erroneous definition led to an improper verdict in
this case.

 

The definition used in
the charge to the jury was as follows:

 

=Implied Warranty of
suitability for commercial purpose= means that when the
lease was entered into there were no latent defects in the facilities that were
vital to the use of the premises for their intended commercial purposes and
that those essential facilities will remain in a suitable condition.  There is an implied warranty of suitability for
commercial purpose in every commercial lease.

 








AVA contends this
definition is essentially the same as the one upheld by the Texas Supreme Court
in Davidow v. Inwood North Pro. Group-Phase I, 747 S.W.2d 373,377(Tex.
1988).  We agree.  GPK cites Gober v. Wright, 838 S.W.2d
794 (Tex. App.BHouston [1st Dist.]
1992, writ den.), to support this issue, and argues an instruction as to
correlative duties under the lease should have been given to the jury; however,
Gober cites and follows Davidow and holds that the tenant=s obligation to pay
rent and the landlord=s implied warranty of
suitability are mutually dependent; and the existence of a breach of the
implied warranty of suitability in commercial leases is usually a fact question
to be determined from the particular circumstances. Davidow, 747 S.W.2d
at 377.  The trial court=s definition of
implied warranty of suitability was not error, and the jury was entitled to
hold GPK=s failure to comply
with the lease was a breach of its implied warranty of suitability of a
commercial lease, or that it was a breach of express provisions of the lease.

GPK=s issue number five is
overruled.

GPK=s issues numbers
seven, nine, ten, eleven and fifteen state as follows:

7. The jury=s finding in response
to Question No. 2 (inquiring whether Appellant=s breach of warranty was excused) is against the
great weight and preponderance of the evidence, or alternatively is supported
by insufficient evidence.

 

9. The trial court
erred in entering final judgment nunc pro tunc on Jury Question No. 4, because
Appellee=s failure to pay rent
is not excused as a matter of law.

 

10. The jury=s finding in response
to Question No. 4 (finding that Appellee=s breach of the lease
was excused) is against the great weight and preponderance of the evidence, or
alternatively is supported by insufficient evidence. 

 

11. The trial court
erred in submitting Question No. 4 (finding that Appellee=s breach of the lease
was excused), because the interpretation of an unambiguous lease is a question
of law for the court.

 

15. The trial court
erred in not awarding Appellant the past due rent owed by Appellee, because
Appellee owed this delinquent rent as a matter of law; alternatively, the jury
should have awarded this delinquent rent to Appellant.

 








GPK
claims there was insufficient evidence to support jury question number two
because AVA=s failure to pay rent
excused GPK of its duties as a matter of law and cites the Gober v. Wright
case to support its argument.  Gober
does not support GPK=s argument, and as we
have already held, the tenant=s obligation to pay
rent and the landlord=s implied warranty of
suitability are mutually dependent.  Davidow,
747 S.W.2d at 377.  The old law which
held such covenants to be independent thereby requiring a tenant to pay rent
even though his landlord has breached his covenant to repair was changed in Kamarath
v. Bennett, 568 S.W.2d 658, 660-61 (Tex. 1978)  for residential leases, and in Davidow
for commercial leases, to be mutually dependent covenants.  Issue fifteen states the issue of the duty to
pay rent in different words than the previous issues but is essentially the
same issue.

As
to its issue that jury question number four was supported by insufficient
evidence GPK again urges that AVA waived its remedies as a matter of law.   We have already held there was no such
waiver.

GPK=s issues numbers
seven, nine, ten, eleven and fifteen are overruled.

GPK=s issue number twelve
states as follows:

12. The trial court
erred in its instruction submitted to the jury in Jury Question No. 4, because
this instruction did not properly inform the jury of the legal definition of Aexcuse.@  The trial court=s error led to an improper verdict in this case.

 








GPK
claims the trial court=s definition of Aexcuse@ which it submitted to
the jury in jury question number four led to an improper verdict  because it permitted the jury to
impermissibly find that AVA was permitted to not pay rent in 1995, due to its
complaints of roof leaks from 1990 through 1992.  GPK cites no authority to support this issue,
and makes the same argument that AVA was required to abandon the premises in
order to be excused from paying rent.  We
disagree.  The instruction properly
stated that AVA=s breach is excused by
GPK=s failure to comply
with a material obligation of the lease, or by GPK=s breach of its
implied warranty of suitability for commercial purposes.  Considering the pleadings, the evidence
admitted at trial and the entire charge, the charge fairly submitted the
disputed issues in this case to the jury. 
Neuro-Developmental Assocs. of Houston v. Corporate Pines Realty Corp.,
980 S.W.2d 26, 28 (Tex. App.BHouston [1st Dist.]
1995, writ denied).

GPK=s issue number twelve
is overruled.

GPK=s issues numbers
thirteen and fourteen state as follows:

13. The jury=s response to Question
No. 5 (awarding damages to Appellee for Appellant=s breach of a warranty of suitability) is against
the great weight and preponderance of the evidence, or alternatively is
supported by insufficient evidence.

 

14. The trial court
erred in admitting evidence (over objection of Appellant) that attempted to
demonstrate that Appellee could receive damages on behalf of A.V.A. Vending,
and the trial court also erred in admitting invoices of alleged damages
prepared two days prior to trial.  These
erroneous evidentiary rulings led to an improper verdict.

 








GPK
claims Plaintiff>s Exhibit No. 92 (PX
#92) was improperly admitted over its objection that it was created on November
30, 1998, two days prior to trial, and not more than thirty days prior to
trial, and rule 215(5) of the Texas Rules of Civil Procedure requires its
exclusion.  PX #92 showed that AVA
Services was responsible for the assets owned by AVA Vending, Inc.  GPK erroneously believed the November 30,
1998 date was the date the exhibit was created, when actually it was created in
1987.  The November 30, 1998 date was a
facsimile machine date on the transmission of same that day in response to a
pre- trial hearing.  GPK failed to make
an objection in the trial court as to the alleged date defect and discovery
rule violation and waived error, if any. 
Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1). There was no
error of the trial court by admitting PX #92.

If
GPK had made the proper objection, the trial court could have properly
overruled it, because no discovery request was made for PX #92.  GPK first raised PX #92 as an issue in the
pre-trial hearing over whether AVA had the right to bring the suit, which was
overruled by the trial court because GPK failed to affirmatively make such a
plea pursuant to rule 93 of the Texas Rules of Civil Procedure.

GPK=s complaint regarding
the admission of invoices was not preserved by a proper objection and is
waived.  Tex. R. App. P. 33.1(a); Tex.
R. Evid. 103(a)(1). 

No
further argument or authorities are urged by GPK to support its issues numbers
thirteen and fourteen except an argument that AVA has no standing and such lack
of standing somehow translates to insufficient evidence, but no objection in
such terms was made by GPK in the trial court and any error as to lack of
standing was waived.  Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1). 








There
was sufficient evidence to support the jury=s award of damages to AVA. No invoices or
documents were used to prove AVA=s damaged equipment
and vehicles.  Mr. Stoutmeister testified
that AVA sustained damage to 18-20 machines per month during over four years,
whereas, the normal number was two per month, and testified to the repair costs
in an amount more than needed to support the jury award of $12,500.00.  Mr. Pourcio testified fifteen of AVA=s trucks had to be
repainted at a cost of $1,500.00 per truck which is more than needed to support
the jury award for such damages.  Product
and inventory loss in the amount of $28,799.88 was proven by Plaintiff=s Exhibit No. 99 (PX
#99), and by the testimony of Mr. Bailey and Mr. Dorset substantiating
$10,000.00 in damages to lost product independent of PX #99.

GPK=s issues numbers
thirteen and fourteen are overruled.

GPK=s issue number sixteen
states as follows:

16. The trial court
erred in failing to instruct the jury that Appellee was a Aholdover tenant@ under the lease. This
error led to an improper verdict.

 

GPK
does not cite any authority or make an argument that the proposed instruction
as to Aholdover tenant@ would have aided the
jury, and its absence probably caused the rendition of an improper verdict as
required by Hill v. Winn Dixie Texas, Inc., 849  S.W.2d 802, 803-04 (Tex. 1992).

GPK=s issue number sixteen
is overruled.

GPK=s issue number
seventeen states as follows:

17.The trial court
erred in rendering Final Judgment Nunc Pro Tunc, because the trial court lacked
jurisdiction to render this Final Judgment Nunc Pro Tunc, and because this
Final Judgment Nunc Pro Tunc constituted an impermissible readjudication of the
parties= substantive rights.

 








GPK
complains that the trial court lacked jurisdiction to render the final judgment
as a Anunc pro tunc judgment@ because the change or
correction was judicial error, not clerical error.  However, the trial court made findings of
fact and conclusions of law explaining that he was changing the judgment to be
the judgment he rendered for AVA because he had signed the wrong judgment and
he was correcting it. In making such findings the court can consider his own
recollection of what occurred.  Pruett
v. Coastal States Trading, Inc., 715 S.W.2d 702, 705 (Tex. App.BHouston [1st Dist.]
1986, no writ).  An incorrect judgment
signed mistakenly is a clerical error and can be corrected at any time.  Andrews v. Koch, 702 S.W.2d 584, 585 (Tex.
1986).

We
hold that the error was clerical and the nunc pro tunc judgment properly
corrected the judgment.

GPK=s issue number
seventeen is overruled.

GPK=s issues eighteen and
nineteen state as follows:

18. The trial court
erred in failing to award Appellant attorneys= fees based on Appellant=s successful
prosecution of its declaratory judgment action and its breach of contract
(breach of lease) cause of action.

 

19. The trial court
erred in awarding attorneys= fee to Appellee,
because there was no predicate breach of contract finding to support an award
of attorneys= fees to Appellee.

 








GPK
contends that it should have been awarded attorney=s fees because the
jury findings that AVA failed to comply with the lease, and that the lis
pendens notice should be removed indicated it prevailed in the prosecution of
its suit; and that the court erred in awarding AVA attorney=s fees and failing to
award GPK attorney=s fees. The jury found
AVA failed to comply with the lease, but found its non-compliance was excused.  GPK did not prevail on its contract claim and
is not entitled to attorney=s  fees under section 38.001, et seq., of
the Texas Civil Practices and Remedies Code. 
See Tex. Civ. Prac. &
Rem. Code Ann. ' 38.001 - ' 38.011 (Vernon 1997).

Further,
GPK claims the trial court erred in failing to award it attorney=s fees under section
37.009 of the Texas Civil Practices and Remedies Code because it prevailed in
prosecuting its declaratory judgment action. See Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997).  However, it is the court=s discretion whether
to award attorney=s fees in declaratory
judgment actions and GPK has not shown the trial court abused its discretion by
denying it attorney=s fees.  Comm=rs Court of Titus Cty. v. Agan, 940 S.W.2d 77, 81
(Tex. 1997).  We hold the trial court did
not abuse its discretion.

GPK=s issues numbers
eighteen and nineteen are overruled.

The
judgment of the trial court is affirmed.

 

MAURICE AMIDEI

Justice

 

Opinion delivered and filed

this 13th day of
March, 2003.

 

 











[1]Former
Justice Maurice Amidei assigned to this Court by the Chief Justice of the
Supreme Court of Texas pursuant to Tex.Gov=t Code Ann. '
74.003 (Vernon 1998).





[2]  Paragraph 8 of the lease provides as follows:
ACONDITION OF
PREMISES. Tenant has examined and accepts the leased premises in its present as
is condition as suitable for the purposes for which the same are leased, and
does hereby accept the leased premises regardless of reasonable deterioration
between the date of this lease and the date Tenant begins occupying the leased
premises unless Landlord and Tenant agree to repairs or refurbishment as noted
in Special Provisions.@





 

[3]  Paragraph 9 of the lease provides in
pertinent part: AMAINTENANCE AND
REPAIRS. Landlord shall keep. . . the roof of the leased premises in good
repair . . .@

 





[4]  Paragraph 29 of the lease provides: ARIGHTS
AND REMEDIES CUMULATIVE. The rights and remedies by this lease agreement are
cumulative and the use of any one right or remedy by either party shall not
preclude or waive its right to use any or all other remedies.  Said rights and remedies are given in
addition to any other rights the parties may have by law, statute, ordinance,
or otherwise.@

 





[5]
Paragraph 23 of the lease in pertinent part provides: DEFAULT BY LANDLORD. In
the event of breach by Landlord of any covenant, warranty, term or obligation
of this lease, then Landlord=s
failure to cure same within 10 days after written notice thereof by Tenant
shall be considered a default and shall entitle Tenant either to terminate this
lease or cure the default and make the necessary repairs and any expense
incurred by Tenant shall be reimbursed by the Landlord after reasonable notice
of the repairs and expenses incurred.  





 

[6]
Paragraph 29 of the lease provides: ARIGHTS
AND REMEDIES CUMULATIVE. The rights and remedies by this lease agreement are
cumulative and the use of any one right or remedy by either party shall not
preclude or waive its right to use any or all other remedies.  Said rights and remedies are given in
addition to any other rights the parties may have by law, statute, ordinance,
or otherwise.@





 

[7]
AVA complained of the roof leaks and demanded that GPK comply with its lease
obligation to repair the roof in at least 37 letters over a two year period.

 





[8] AVA was
instructed by GPK to make its complaints to GPK=s
real estate agent rather that to GPK.





[9]
Tex. R. App. P. 53.





[10]
Winslow v. Dillard Dep=t
Stores, Inc., 849 S.W.2d 862 (Tex. App. B
Texarkana 1993, writ denied); Zwick v. Lodewijk Corp., 847 S.W.2d 316
(Tex. App. B Texarkana
1993, writ denied); Regent Intern. Hotels v. Los Colinas Hotels, 704
S.W.2d 101 (Tex. App. B Dallas 1985,
no writ).





[11]
Paragraph 8 of the lease provides as follows: ACONDITION
OF PREMISES. Tenant has examined and accepts the leased premises in its present
as is condition as suitable for the purposes for which the same are leased, and
does hereby accept the leased premises regardless of reasonable deterioration
between the date of this lease and the date Tenant begins occupying the leased
premises unless Landlord and Tenant agree to repairs or refurbishment as noted
in Special Provisions.@