# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

**NO. 03-03-00319-CV**
**NO. 03-03-00320-CV**

**Thomas Retzlaff, Appellant**

**v.**

**Joel S. McDonald, Appellee**

**&**

**George R. Hollas, Jr. and Denise A. Retzlaff, Appellees**

**FROM THE COUNTY COURT AT LAW NO. 3 OF BELL COUNTY,**
**NOS. 45,524 & 42,950 HONORABLE GERALD M. BROWN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant, Thomas Retzlaff, obtained judgments in the county court at law against his ex-wife Denise A. Retzlaff, George R. Hollas, Jr., and Joel S. McDonald for civil conspiracy to commit conversion/theft, defamation, and malicious prosecution.[1] In each case, appellees were held jointly and severally liable for $9,575 in actual damages on the conversion/theft count and nominal damages of $10 for the defamation count and general damages of $10 on the malicious prosecution

---

[1] The causes of action against appellees were initially brought as one lawsuit, but were severed after default judgments were obtained against Hollas and Denise Retzlaff. The cases have been consolidated on appeal.

count.  An additional $905 in damages were awarded against McDonald for his appropriation of appellant's property.  The court declined to award exemplary damages.  Appellant contends that the trial court's award of damages in an amount less than he requested was against the great weight and preponderance of the evidence and was manifestly unjust.  He further raises an issue that the trial court abused its discretion in choosing not to consider, or deem admitted, certain requests for admissions sent to the appellees' last known addresses.  We affirm the judgments of the trial court.

**Factual Background**

In early 1997, appellant and his wife, Denise Retzlaff, decided to divorce.  Before any legal division of their marital assets, appellant was arrested for unlawfully carrying a weapon in a prohibited place.  He was placed on deferred adjudication community supervision, but was required to first serve 180 days in the Bell County jail.  While appellant was in jail, Denise Retzlaff obtained the services of an attorney and filed for divorce.  She also alleged that appellant had raped her, and appellant was indicted for sexual assault.  These allegations were supported by an edited videotape purporting to record the assault.  The sexual assault charges were eventually dismissed.  During this time, an action to terminate appellant's parental rights to his two children was also initiated.

In August 1997, after serving 180 days in the Bell County jail, appellant was released and began working for a local mortuary.  By October 1997, allegations were made that appellant had committed several burglaries and he was arrested pursuant to a motion to revoke his probation.  The motion included the burglary and sexual assault allegations.  The motion was granted and appellant was sentenced to 8 years in prison; no burglary charges were brought.  The termination proceeding went to trial before a jury and appellant's parental rights to his two children were terminated.

2

Appellant sued his ex-wife, her attorney Michael White, White's law firm, McDonald, and Hollas, alleging that they had (i) conspired to steal property awarded to appellant in the divorce proceedings, (ii) defamed him by falsely accusing him of sexual assault and burglary, and (iii) maliciously caused him to be prosecuted for sexual assault. Denise Retzlaff and George Hollas did not answer the suit and a default judgment was obtained by appellant in September 1999. Joel McDonald filed a general denial to the claims in appellant's petition but did not timely respond to appellant's first and second requests for admissions. These requests, which contained concessions of liability, were deemed admitted by the court and appellant's motion for partial summary judgment against McDonald was granted. McDonald subsequently filed for bankruptcy protection in November 2001, but the federal district court abated the bankruptcy proceedings until appellant's claims in state court were resolved. Appellant informed this Court in his brief that his case against White was proceeding to trial and that he and White's law firm had reached a settlement agreement.

On May 24, 2002, appellant mailed his third request for admissions to McDonald at his last known address. Soon after, he mailed a request for admissions to Hollas at his last known address. These documents requested McDonald and Hollas admit to liability and to economic and exemplary damages totaling at least $300,000. The record reflects that appellant was aware that neither address was current and that neither Hollas or McDonald actually received the requests.

In January 2003, the court held separate hearings on damages in both cases. Paul LePak, appellant's attorney in the termination and criminal proceedings, and appellant were the only witnesses called at the hearings. LePak testified primarily regarding his visits with appellant at the Bell County jail. He confirmed that the criminal allegations against appellant had a negative effect

3

and that appellant was hostile, angry, and frustrated. He also stated that the sexual assault allegations played a big role in the termination proceedings and that appellant was more upset about the termination of his parental rights than his incarceration.

Appellant testified that the appellees' actions caused him great mental anguish. He stated that the allegations of sexual assault caused him problems in the Bell County jail and distressed his parents. He explained that he has been treated for depression since the allegations were made and that he had attempted suicide. He stated that the medication he takes for depression causes him fatigue, drowsiness, and confusion. He also complained that the appellees had ruined his relationship with his children. At both hearings, appellee detailed the property awarded him in the divorce proceedings. A final judgment awarding damages in both cases was rendered by the trial court in February 2003 and modified judgments and findings of fact and conclusions of law were signed that March.

**Discussion**

Appellant contends in his first issue that the trial court abused its discretion in failing to consider, or deem admitted, requests for admissions that were mailed to McDonald and Hollas. Appellant mailed the requests for admission to the last known addresses of both McDonald and Hollas and he argues that, therefore, he properly served the requests. Thus, appellant contends that Hollas's and McDonald's failure to respond to the requests should have been deemed an admission and the trial court's failure to consider these admissions resulted in an improper judgment as evidenced by the court's decision to award only nominal damages on his defamation and malicious prosecution claims.

4

Rule 198 of the Texas Rules of Civil Procedure entitles a litigant to serve requests for admissions on another party in a civil action. If a response to the request is not timely served on the requesting party, the request is considered admitted. Tex. R. Civ. P. 198(c). However, a request for admission must actually be served on the party in order to trigger the obligation to respond. *Id.* Appellant argues that he effectively served Hollas and McDonald by sending the request, via certified mail, to their last known addresses. *See* Tex. R. Civ. P. 21(a). Indeed, such compliance with Rule 21(a) creates a presumption of receipt by the party. *Thomas v. Ray*, 889 S.W.2d 237, 238 (Tex. 1994); *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987); *Payton v. Ashton*, 29 S.W.3d 896, 898 (Tex. App.—Amarillo 2000, no pet.). Evidence of non-receipt of a document served through the mail in compliance with Rule 21(a), however, negates that presumption. Tex. R. Civ. P. 21(a) ("Nothing herein shall preclude any party from offering proof that the notice or instrument was not received."); *Thomas*, 889 S.W.2d at 238 (presumption of receipt rebutted by proof to the contrary).

The trial court's findings of fact in the case against McDonald state that a notice of hearing sent by the court to McDonald's last known address was returned by the post office marked "attempted-not-known" with a note that the box holder denied being the addressee and stated that he does not know the addressee. Appellant's requests for admission were sent to the same address. Similarly, the trial court's findings of fact in the case against Hollas and Denise Retzlaff state that notices sent to their last known address were returned marked "not deliverable." Appellant's request for admission was sent to Hollas at the same address and appellant stated at the hearing that the request was also returned in the mail undelivered.

5

The fact that the trial court's notices to McDonald and Hollas were returned with indications that they had not been received is evidence that the requests for admissions sent to the same addresses were not received as well. The trial court was entitled to rely on this evidence in concluding that the requests for admission were not actually received by McDonald and Hollas and, therefore, not properly served under Rule 21(a). The trial court did not abuse its discretion in failing to consider, or deem admitted, appellant's requests for admission. *See Payton*, 29 S.W.3d at 898-99. We overrule appellant's first issue.

Appellant contends in his second issue that the trial court's decision to award only nominal damages, and no exemplary damages, on his claims of defamation and malicious prosecution was against the great weight and preponderance of the evidence. In considering a challenge that a verdict is against the great weight and preponderance of the evidence, we must weigh all the evidence; we will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). A trial court's findings of fact have the same force and dignity as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). It is the role of the trial court to determine the credibility of the witnesses and the weight to be given their testimony. *White v. Chamberlin*, 525 S.W.2d 273, 275 (Tex. Civ. App.—Austin 1975, no writ). Generally, the trier of fact may believe all, part, or none of a witness's testimony and is not required to believe even witnesses who are unimpeached or uncontradicted. *Gray v. Floyd*, 783 S.W.2d 214, 216 (Tex. App.—Houston [1st Dist.] 1989, no writ); *Tatum v. Huddleston*, 711 S.W.2d 367, 369 (Tex. App.—Texarkana 1986, no writ).

6

In this case, appellees either defaulted or were deemed to have admitted liability and did not appear at the hearings on damages. When a judgment is taken by default, the defaulting party admits to all allegations of fact set out in the petition except for the amount of damages. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984). A plaintiff must show, by competent evidence, a causal nexus between the event sued upon and his injuries. *Id.* The court may award no damages when the injuries sustained are subjective in nature. *Biggs v. GSC Enters., Inc.*, 8 S.W.3d 765, 769 (Tex. App.—Fort Worth 1999, no pet.); *Lamb v. Franklin*, 976 S.W.2d 339, 341 (Tex. App.—Amarillo 1998, no pet.); *Blizzard v. Nationwide Mutual Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988, no writ). Here, appellant presented some evidence of injury, but his and LePak's testimony demonstrated that the injury, excluding the loss of property, was subjective and did little to show the required causal nexus with the appellees' tortious conduct.

Both appellant and LePak testified that appellant was hostile, upset, and distressed by the termination of parental rights proceeding and the allegations of sexual assault. Appellant testified that he has been treated for depression since the allegations were made, has attempted suicide, and takes medication which causes fatigue, confusion, and drowsiness. He also stated that the sexual assault allegations had ruined his relationship with his children. LePak testified that the allegations played a big role in the termination proceeding, but did not provide any details regarding the proceeding or how the sexual assault allegations may have affected the outcome.[2]

---

[2] Although we will not consider it for the purposes of this appeal, we note that our opinion affirming the judgment terminating Retzlaff's parental rights recites facts inconsistent with the testimony presented at the hearing on damages. *See Retzlaff v. Texas Dept. of Protective & Regulatory Services*, No. 03-98-00201-CV, 1999 Tex. App. LEXIS 5547 (Austin July 29, 1999, pet. denied). In discussing the sufficiency of the evidence to support the termination we summarized the

Appellant claimed lost wages as a result of the malicious prosecution. He alleged that the false sexual assault and burglary allegations led to the loss of his job due to his arrest in October 1997 pursuant to a motion to revoke his probation. Although appellant was incarcerated prior to the allegation of sexual assault being made, he was released despite the pending indictment. He testified that the sexual assault and burglary allegations were "a part" of the motion to revoke his probation, but did not introduce the motion or establish in any way that these allegations were the actual cause of the revocation.

Weighing all the evidence, we do not conclude that the trial court's award of only nominal damages for appellant's claims of defamation and malicious prosecution was against the great weight and preponderance of the evidence or so contrary to the overwhelming weight of the

evidence:

> Retzlaff testified that he left the children alone in the house, that he kept a loaded gun in the house, that he kept pornographic materials in areas of the house that were accessible to the children, and that he participated in sexual acts near the children on more than one occasion. Denise Retzlaff testified that Retzlaff began leaving the children alone in the house when the eldest was three weeks old, that he kept pornographic magazines under the master bed and on the night stand, that he masturbated with the aid of pornographic materials, and that she discovered one of the children imitating Retzlaff's behavior in front of the pornographic materials at the age of six. Both children told Dr. Pugliese, the Department's expert, that they witnessed Retzlaff masturbating and/or watching pornographic movies on the television. One child stated that he occasionally looked through some of the pornographic magazines and watched X-rated movies from his bedroom while Retzlaff was masturbating. He also told a school counselor that Retzlaff would touch his sister's older friends in their private places. Both children expressed dislike towards Retzlaff, and one told Dr. Pugliese that she felt uncomfortable around Retzlaff and had no interest in living with him.

*Id*. at *18-*19.

evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. The majority of appellant's claimed damages were subjective, and the testimony that appellant's injuries actually resulted from the tortious conduct of appellees was conclusory.

Appellant also contends that the trial court's failure to award exemplary damages was against the great weight and preponderance of the evidence. An award of exemplary damages rests largely in the discretion of the trier of fact. *Southwestern Inv. Co. v. Neeley*, 452 S.W.2d 705, 708 (Tex. 1970); *Preston Carter Co. v. Tatum*, 708 S.W.2d 23 (Tex. App.—Fort Worth 1986, writ ref'd). In determining an award of exemplary damages, a trial court considers factors such as: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends the public sense of justice and propriety. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). These factors often overlap and do not always apply to every award of exemplary damages. *Gray v. Allen*, 41 S.W.3d 330, 332 (Tex. App.—Fort Worth 2001, no pet.). Exemplary damages must be reasonably proportioned to the actual damages. *Kraus*, 616 S.W.2d at 910. The trial court was in the best position to assess the evidence in light of these factors.

Applying these factors to the evidence, the trial court may have concluded that other defendants were more culpable than the appellees. The situation and sensibilities of the parties were relatively equivalent in contrast to instances where a commercial enterprise abuses its greater resources to the detriment of an unknowing individual. Furthermore, the actual damages awarded were considerably lower in proportion to the exemplary damages sought by appellant. Reviewing

9

the evidence, we do not find that the trial court's failure to award exemplary damages was against the great weight and preponderance of the evidence.  We overrule appellant's second issue.

Because we overrule both of appellant's issues, we affirm the judgments of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   March 18, 2004